MIDDLETON v. TEXAS POWER & LIGHT CO. (No. 5408.) †

(Court of Civil Appeals of Texas. Austin. Jan. 20, 1915.)

1. CONSTITUTIONAL LAW ☞301—MASTER AND SERVANT ☞16½. New, vol. 16 Key-No. Series—DUE PROCESS OF LAW—EMPLOYERS' LIABILITY ACT.

The Employers' Liability Act (Acts 33d Leg. 1913, c. 179, pt. 1, § 1 [Vernon's Sayles' Ann. Civ. St. 1914, art. 5246h]) abolishes certain common-law defenses available to the employer in personal injury suits by an employé. Section 3 takes away any right of action by employés of subscribers for damages for personal injuries, and provides that they shall look for compensation solely to certain insurance associations or companies. Section 4 excludes employés from the benefits of the insurance organization if their employers are not subscribers. Section 6 provides that no compensation shall be paid for an injury not incapacitating from earning full wages for at least one week. Section 7 provides for medical aid during the first week. Section 10 fixes a maximum and minimum amount to be paid weekly to an injured employé during a maximum period while totally incapacitated. Section 11 provides for the payment of certain amounts during partial incapacity. Section 12 provides compensation for specific injuries, and section 14 provides that an employé's agreement to waive the right to compensation under the act shall be invalid. Part 2 creates an Industrial Accident Board, which, by section 4, may require any employé claiming injury to submit to a physical examination the refusal to submit to which shall deprive the employé of the right to compensation while continued. Section 5, provides that a party not willing to abide the decision of the board may sue the insurance association on his claim. Part 3 creates an Employers' Insurance Association, and by sections 19 and 20 requires subscribers to notify employés of provision for compensation by the association. Part 4 defines terms used in the act. *Held*, that so much of the statute as deprived an employé of what otherwise would be his cause of action against his employer, and left the remedy optional as to the employer, and compulsory as to the employé whose employer had elected to avail himself of the benefits of the act, was in violation of the due process of law clauses of Const. U. S. Amend. 14 and Const. Tex. art. 1, § 19, declaring that no citizen shall be deprived of liberty, property, or privileges except by due course of law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 848–850, 857; Dec. Dig. ☞301.]

2. CONSTITUTIONAL LAW ☞245—EQUAL PROTECTION OF THE LAWS—EMPLOYERS' LIABILITY ACT.

Such part of the act as deprived an employé of what otherwise would be his cause of action against his employer, and left the remedy optional with the employer and made it compulsory as to the employé whose employer had elected to avail himself of the benefits of the act, was in violation of Const. U. S. Amend. 14 declaring that no state shall deny to any person the equal protection of the laws, and of Const. Tex. art. 1, § 3, declaring that all free men forming a social compact have equal rights, and that no one is entitled to exclusive privileges except in consideration of public services.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 702; Dec. Dig. ☞245.]

3. CONSTITUTIONAL LAW ☞64—LEGISLATIVE DEPARTMENT—DELEGATION OF LEGISLATIVE POWERS—EMPLOYERS' LIABILITY ACT.

Such part of the act amounted in substance to a delegation of legislative functions to the employer to choose between two radically different systems of law governing his liability to his employés, in violation of the federal Constitution and of the provision of the Texas Constitution, vesting in the Legislature the exclusive power to make laws.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 91, 92; Dec. Dig. ☞64.]

4. CONSTITUTIONAL LAW ☞211—CLASS LEGISLATION.

Legislation may be based upon reasonable classification, and, when so done without discrimination among different members of the class, it is not obnoxious to federal and state Constitutions.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 678; Dec. Dig. ☞211.]

5. MASTER AND SERVANT ☞16½, New, vol. 16 Key-No. Series—POLICE POWER—EMPLOYERS' LIABILITY ACT.

The power of the Legislature to enact an employers' liability act must find its source and authority in the police power of the state.

Appeal from District Court, McLennan County; Tom L. McCullough, Judge.

Action by Charles Middleton against the Texas Power & Light Company. Judgment for defendant, dismissing the action, and plaintiff appeals. Reversed and remanded.

Witt & Saunders, Chas. B. Braun, and J. E. Yantis, all of Waco, for appellant. Lawther, Pope & Mays and Homer R. Mitchell, all of Dallas, for appellee. Spell & Sanford, of Waco, and Gregory Batts & Brooks, of Austin, for Industrial Board.

KEY, C. J. Appellant brought this suit against appellee, seeking to recover $5,000 as damages for injuries sustained by him while in the employ of appellee, which injuries he alleged were caused by appellee's negligence. Appellee filed a plea in abatement showing that it, as an employer, had complied with the requirements of the Employers' Liability Act enacted by the Thirty-Third Legislature, and asked that the suit be dismissed. In a supplemental petition appellant excepted to the plea referred to, charging that the Employers' Liability Act was unconstitutional and void. The trial court overruled the exceptions, sustained the plea in abatement, and dismissed the cause of action, and the appellant has prosecuted an appeal.

If that portion of the Employers' Liability Act which prescribes that when an employer has complied with the requirements of the act his employés shall have no right of action against him for damages for personal injuries is unconstitutional and void as to nonconsenting employés, then the trial court committed error when it sustained the plea in abatement. The act referred to is too voluminous to be copied in full in this opinion, and we deem it sufficient to copy from appel-

lant's printed argument the following synopsis of it:

"Chapter 179 of the General Laws of the state of Texas passed by the Thirty-Third Legislature at its regular session, page 429, approved April 16, 1913, effective September 1, 1913, is divided into four parts.

"Section 1, pt. 1, abolishes certain common-law defenses available to the employer in personal injury suits brought by an employé. Section 2 declares that the provisions of the act shall not apply to actions to recover damages for personal injuries sustained by certain classes of employés. Section 3 takes away any and all rights of action by employés of subscribers against their employer for damages for personal injuries, and provides that they shall look for compensation solely to certain insurance associations or companies, which, by subsequent terms of the law, the employer is allowed to contract with for the benefit of such employés. Section 4 excludes employés from participating in the benefits of the insurance organization, if their employers are not subscribers, and also declares their constitutional and common law right to bring suits against their employers. Section 5 relates solely to the recovery of exemplary damages. Sections 6 to 13 relate to the scale of compensation to be paid to the injured employé. For the purposes under consideration, it is sufficient to note that section 6 provides that no compensation shall be paid for an injury which does not incapacitate the employé for a period of at least one week from earning full wages; that section 7 makes provision for furnishing, during the first week, of reasonable medical aid, hospital services, and medicine; that section 10 fixes a maximum and minimum amount to be paid weekly to an injured employé during a maximum period of time, while incapacity for work is total; that section 11 has the same character of restrictions, while the capacity for work is partial; that section 12 provides for certain compensation for certain specific injuries. By section 14 it is provided that no agreement of any employé to waive his rights to compensation under this act shall be valid.

"Part 2 of the act creates an Industrial Accident Board, with state-wide jurisdiction of the subject-matter presented in the act. For the purposes under consideration it is sufficient to note, by section 4 of part 2, it is provided that the board may require any employé, claiming to have sustained injury, to submit himself to a physical examination, and that a refusal so to do shall deprive him of the right to compensation during the continuance of such refusal; that section 5 provides that, in the event an interested party is not willing to abide the final ruling and decision of the board on any disputed claim, he may sue on such claim, or may require suit to be brought thereon in some court of competent jurisdiction, and that, in such suit, the rights and liabilities of the parties thereto shall be determined by the provisions of this act; that such suit shall be against the association and the recovery shall not exceed the maximum of compensation allowed under the provisions of this act.

"By part 3, the 'Texas Employers' Insurance Association' is created a body corporate, with powers provided for in subsequent sections of the act. Sections 19 and 20 of the act provide that subscribers shall give notice in writing or print to all persons under contract of hire with him, and to all persons about to enter into a contract of hire with him, that he has provided for payment of compensation for injuries to employés by the association.

"Part 4 defines the terms used generally in the act. Among other terms thus defined is 'association,' which is declared to mean the 'Texas Employers' Insurance Association,' or any other insurance company authorized under this act to insure the payment of compensation to injured employés, or to the beneficiaries of deceased employés. 'Subscriber' is also defined to mean, 'any employer who has become a member of the association by paying a year's premium in advance and received the receipt of the association therefor.' Section 2 of part 4 grants insurance companies, other than the Texas Employers' Association, the right to insure the liability to pay the compensation provided for by the act, and imposes certain duties upon such companies. Section 4, pt. 4, provides that, should any 'part' of this act be for any reason held to be invalid or inoperative, no other part or parts shall be affected thereby, and if any exceptions to, or limitations upon, any general provision herein contained shall be held to be unconstitutional or invalid or ineffective, the general provisions shall, nevertheless, stand effective and valid as if it has been enacted without exception or limitation."

The counsel who represent appellant have filed, well-prepared printed brief and argument, presenting quite a number of constitutional objections to the validity of the statute in question. Counsel for appellee, in printed brief and argument, manifesting equally as much ability and research, have undertaken to answer all the objections referred to; and, in addition to this valuable assistance, the respective counsel made able oral arguments when the case was submitted.

This court has attempted to give the case that careful consideration which its importance demands, and the writer of this opinion has read every American decision construing employers' liability or workman's compensation acts cited by counsel or otherwise found. In some of the states, if not in all, there seems to be great necessity and demand for legislation upon the subject referred to; and, while this court is not required to commit itself upon any question of legislative policy, still we feel that it is not improper to say that the evils sought to be cured by such legislation are widespread and of such a nature as to justify the best efforts of statesmanship, in order that a law may be enacted which will afford substantial remedy without exceeding constitutional limitations.

Several of the states have already dealt with the question, and some of the provisions of their statutes, and the decisions construing them, may hereafter be referred to.

[1-3] We have reached the conclusion that so much of the statute here involved as undertakes to deprive an employé of what otherwise would be his cause of action against his employer is unconstitutional and void; but as the jurisdiction of this court is not final, and as the case will go to the Supreme Court, we shall not undertake to decide other constitutional questions. Our reason for holding that the provision of the statute referred to is unconstitutional is based upon the fact that it leaves it optional as to the employer, and makes it compulsory as to the employé when the employer has elected to avail himself of the benefits of the statute. The federal Constitution declares that no state shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal

protection of the laws; and our state Constitution, in section 3, art. 1, in general terms declares the equal rights of men. Section 19, art. 1, reads:

"No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

The Constitution also vests in the Legislature the exclusive power to make laws, and therefore that body has no power to delegate legislative authority to any private person. Undoubtedly, the statute here involved is optional as to the employer—he has his choice and may or may not become a subscriber, pay premiums, obtain insurance for the benefit of his employés, and thereby release himself from what would otherwise be his liability to such employés. It is true that if he does not pursue that course he loses some of his common-law defenses, but the fact remains that he has an option and may choose between two laws concerning himself and his employés and fixing their respective rights.

We think it is also quite clear that the statute is compulsory as to the employé, and allows him no choice as to whether he will accept its terms, or claim his rights as they formerly existed according to the common law. This being the case, we think it is clear that this statute, in so far as it undertakes, without his consent, to deprive an employé of his common-law right of action at the option of his employer, is violative of the constitutional provisions above referred to. True it is, in theory, if not in fact, that every man has the privilege of declining to accept employment from any particular person or corporation; but, if he pursues that course and remains out of the employment of any employer who has accepted the terms and provisions of this statute, then he has not exercised any option as an employé. He has merely declined to become an employé. In several of the states which have legislated upon the subject, it has been left optional with both employer and employé, and, if the employer chooses to accept the terms of the law, his employé, without giving up his employment, may decline to accept under the statute and retain his common-law right of action against his employer. In some of the other states the law is compulsory as to both employer and employé. The Texas statute declares, in express terms, that, when an employer has complied with its provisions, neither the employé nor his legal representatives shall have any right of action against him for injuries to such employé; and it makes no provision whereby the employé can exercise his option and either accept or reject that provision of the statute. In other words, the statute presents to the employer two laws, differing widely and radically concerning his liability to his employé, and permits him to choose, without the consent of his employé, which of those two laws shall fix the rights of his employé as against him. If he selects one of those laws, his employé can maintain an action against him and recover damages for personal injuries caused by his negligence, according to the common law as it existed before this statute was enacted; while if he selects the other law, by which a limited amount of compensation is to be paid to the injured employé by an insurance company, he (the employer) is relieved from liability, and an employé injured by his negligence can maintain no cause of action against him. It is true that if he pursues the latter course he is required to pay the premiums for insurance for the protection of his employés, but he is not required to make any change whatever in the conditions under which the employé works. The hazards to the employé may remain the same, while the employer, without the consent of the employé, has the option to substitute for his common-law liability insurance in behalf of the employé for a limited amount of compensation for injuries which he may sustain in the course of his employment. Has the Legislature the power to enact a law that embodies such a fundamental and far-reaching discrimination in favor of the employer and against the employé? After careful and patient consideration, we think it is clear that this question must be answered in the negative, and that feature of the statute be declared unconstitutional.

In Yick Wo v. Peter Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, the Supreme Court of the United States held that an ordinance of the city of San Francisco, providing that it should be unlawful for any person to engage in the laundry business within the corporate limits, without having first obtained the consent of the board of supervisors, except the same be located in a building constructed of brick or stone, was in contravention of the fourteenth amendment to the Constitution of the United States and void, and in the course of the opinion the court said:

"When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power. Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but in our system, while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts. And the law is the definition and limitation of power. It is, indeed, quite true that there must always be lodged somewhere, and in some person or body, the authority of final decision; and in many cases of mere administration the responsibility is purely political, no appeal lying except to the ultimate tribunal of the public judgment, exercised either in the pressure of opinion or by means of the suffrage. But the fundamental rights to life, liberty, and the pursuit of happi-

ness, considered as individual possessions, are secured by those maxims of constitutional law which are the monuments showing the victorious progress of the race in securing to men the blessings of civilization under the reign of just and equal laws, so that, in the famous language of the Massachusetts Bill of Rights, the government of the commonwealth 'may be a government of laws and not of men.' For the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails as being the essence of slavery itself."

In that case it was held that it was not in the power of the state or any of its subordinate municipalities to confer upon a board (presumably of disinterested persons) the arbitrary power to determine whether or not a particular statutory enactment should apply to a particular person; and, for a higher and greater reason, it seems to us that it must be held that it is beyond the domain of legislative power to confer upon any person authority to say what particular law, or which of two particular laws, shall govern his rights and the rights of his employé as between them.

[4] We are not unmindful of the rule, supported by all the authorities, that legislation may be based upon reasonable classification; and when so done, and no discrimination is made among different members of a class, such legislation is not obnoxious to federal and state Constitutions. But the rule and decisions referred to do not go to the extent of holding that, without doing anything to lessen the risk and hazards of the employment, an employer, without the consent of his employé, may, at his own option, substitute the liability of another for his own liability to the employé, and thereby release himself from all liability. Therefore it is no answer to say that the Texas statute affords equal rights, privileges, and protection to the employers as one class, and the employés, as another class, who come within the purview of its provisions. This statute is an illustration of the fact that legislation may be so discriminatory and unjust as between classes as to bring it in conflict with those constitutional provisions which guarantee due process and equal protection of the laws. Nor does it suffice to say that the statute in question shows upon its face that it was enacted for the benefit of employés, and therefore the courts, in determining its validity, should assume that the employé who has an opportunity to avail himself of its benefits has been benefited and not injured, and consequently ought not to be heard to complain. Considering the schedules prescribed by this statute, the maximum amount per week that can be claimed by an injured employé, and the limited number of weeks' compensation is allowed, and the fact that since the statute became effective on September 1, 1913, about 3,000 employers have availed themselves of its benefits, we are not prepared to say that no room exists for differences of opinion as to whether the stat-

ute will result in material benefit to employés considered in the aggregate; and it is quite clear, when considered in the concrete, and applied to this case, if the facts are as alleged in plaintiff's petition, he might reasonably and fairly obtain more compensation under the rules of the common law than he could obtain under this statute.

But these considerations do not constitute a proper test of the validity of legislation conferring an option on the employer to decide which of two different rules of law shall govern as between himself and his employé. The validity or invalidity of such legislation does not rest upon what would be the result in a particular case. The insuperable objection is that it is not only contrary to the plainest dictates of right and justice that, where the interest of persons may conflict, neither one should have the power to determine what rule of law should govern; but, under our form of government, any legislation which undertakes to confer upon any individual or class of individuals such a privilege, violates constitutional provisions, both state and national. Such legislation cannot justify itself in the forum of conscience, because it contravenes that rule of justice which forbids any man to act as judge or juror in his own case. It is immaterial that a particular man, in such circumstances, might disregard his own interest and decide the matter fairly. We do not make nor administer our laws upon the Utopian theory that any man will do absolute justice by his fellow man, although he may have a strong motive for acting otherwise. On the contrary, we make and endeavor to administer laws upon the theory that when men deal with each other they may not do that which justice and fair-dealing dictates should be done. So, we know, as matter of common knowledge, that while, in a certain sense, the interest of capital and labor may be identical, still, when capital deals with labor in the concrete, if either has an opportunity to do so, it may drive a hard bargain and impose unjust hardships upon the other. It will be a sad day, if it ever comes, when capital may dictate to labor, or labor may dictate to capital, the rule of law which is to control in determining their respective rights as against each other. And we deem it proper to say that if the terms of this statute were reversed, and employés accorded the exclusive privilege of choosing between two laws, our decision would be the same.

But, before leaving this branch of the discussion, we recur to the fact that the statute in question in its last section recites that it is enacted for the benefit of employés injured in industrial accidents; and yet it is so framed that no employé can obtain the benefit of it without the consent of his employer, and it entirely excludes from whatever may be its benefits all employés operating railways as common carriers and all laborers engaged in working for cotton gins. These

exemptions are urged as a reason against the constitutionality of the statute; but, without expressing any opinion upon that subject, we think the exemptions noted indicate either that the Legislature was not endeavoring to protect the interests of all employés engaged in industrial pursuits, or that that body had serious doubts as to whether the law then being enacted would accomplish the result intended.

Upon the subject we have been discussing, and the only question we have undertaken to decide, we have found no decision, either federal or state, which is directly in point. The statute involved in Ives v. South Buffalo Ry. Co., 201 N. Y. 271, 94 N. E. 431, 34 L. R. A. (N. S.) 162, Ann. Cas. 1912B, 156, was limited to certain hazardous employments; was compulsory as to both employer and employé; and, instead of abolishing, it extended the employer's liability so as to include injuries for which the employer was in no sense to blame, and for that reason it was held to be unconstitutional. It gave no option to either party, and therefore the question of discrimination in that respect was not involved.

The Massachusetts statute, which was ruled upon in Re Opinion of Justices, 209 Mass. 607, 96 N. E. 315, is similar in many respects to the Texas statute, with the important distinction that the employé, as well as the employer, was given his option to accept under the statute or maintain his rights at common-law, and the court said:

"There is nothing in the act which compels an employer to become a subscriber to the association, or which compels an employé to waive his right of action at common law and accept the compensation provided for in the act. In this respect the act differs wholly, so far as the employer is concerned, from the New York statute above referred to. By subscribing to the association, an employer voluntarily agrees to be bound by the provisions of the act. The same is true of an employé who does not choose to stand upon his common-law rights. * * * Taking into account the noncompulsory character of the proposed act, we see nothing in any of these provisions which is not 'in conformity with' the Fourteenth amendment of the federal Constitution, or which infringes upon any provision of our own Constitution in regard to the taking of property 'without due process of law.'"

The Washington act was upheld by the Supreme Court of that state in State ex rel. Davis-Smith Co. v. Clausen, 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, but that act was compulsory as to both employers and employés.

The Montana act was passed upon in Cunningham v. Northwestern Improvement Co., 44 Mont. 180, 119 Pac. 554, and was declared unconstitutional, because it permitted a double recovery against the employer. It did not involve the question we are dealing with in this case. And the same may be said as to laws upon the same subject enacted in Wisconsin, New Jersey, Illinois, Ohio, Minnesota, and Kentucky, all of which have been sustained by the courts of last resort in those states, with the exception of the Kentucky

statute, which has been declared unconstitutional by the Supreme Court of that state since this case was submitted in this court. That decision, however, throws no particular light upon the question now under consideration. Neither of these laws gives an unilateral option to either employer or employé. They are either compulsory or optional as to both. When such statutes leave it optional with each party affected thereby, it may well be held, as has been done by some of the courts, that, when both have elected to claim their benefits, they have waived whatever rights they might have had to object to their validity; and have, in effect, made the law a part of the contract between them. But when a statute is made compulsory upon both parties, while other objections may be made, neither party can raise the question we are dealing with. As heretofore stated, our decision of that question rests upon the proposition that legislation which confers upon either an employer or employé power to choose, between two radically different laws, which of the two shall govern in determining their rights as against each other, is in contravention of our federal and state Constitutions. It amounts, in substance, to an unconstitutional delegation of legislative functions.

In reaching the conclusion and making the decision we have made, it is deemed proper to say that, inasmuch as the Texas statute provides, in terms, that if any part of it shall be held invalid or inoperative no other part or parts shall be affected thereby, we do not hold that, the entire act is invalid or inoperative; but merely hold that, unless it be shown that the appellant in this case, who is an employé suing his employer, has consented to accept the terms of the Texas act relating to employers' liability, he has not lost his common-law right of action. In so far as our decision is concerned, and unless the law is unconstitutional in other respects, we see no reason why it may not stand in force and be administered for the benefit of consenting employers and employés.

Without any intention of dictating to the Legislature, we deem it not amiss to say that it would seem that, if legislation of this character is made optional as to both parties, many, if not all, objections to its validity would be avoided. If such legislation be made compulsory as to both parties, and is made to embrace all hazardous employments, and is limited so as not to include others that are not hazardous, it may escape the charge of going beyond the police powers of the state.

[5] It seems to be generally conceded that legislation of this character must find its source and authority in the police power of the state; and it has been said by some of the courts that legislation regulating private business must be limited to hazardous employment. A merchant or a banker who keeps more than five employés can avail him-

self of the benefits of the Texas statute, while neither an employer nor his employés engaged in operating a railroad as a common carrier can obtain its benefits. There is no particular danger or hazard in working for a merchant or banker, while employés who are engaged in the operation of railway trains are constantly exposed to extra hazards. However, we do not hold that these apparently incongruous provisions are fatal to the validity of the law; nor do we hold that the objection which we have sustained cannot be cured by amendment. For a lucid discussion and illustration of the police power and its extent, we refer to the opinion of Mr. Justice Williams in Railway Co. v. Dallas, 98 Tex. 396,† which was approved in the recent case of Railway Co. v. Griffin, 171 S. W. 703, decided by the same court and not yet reported.

For the reasons given, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes