held in Alford v. State, 8 Tex. App. 560. The court correctly states:

"The liberty of the citizen is as important as the interests of society. In fact, it is one of the fundamental purposes proposed to be subserved by the organization of society and government. The law provides the instrumentalities by which the personal liberty of the citizen may be restrained, temporarily or permanently, in the interests of society, and these exact instrumentalities must be evoked in case it be sought to effect such deprivation. No person other than an officer can make an arrest, unless a felony or breach of the peace is committed in his presence or within his view."

See, also, Staples v. State, 14 Tex. App. 139; Mundine v. State, 37 Tex. Cr. R. 5, 38 S. W. 619.

The rule is announced in these cases that though a person is committing a misdemeanor, is boisterous in one's place of business, the right of a private citizen to arrest does not arise. He would have the right to demand that they desist, and even use such force as may be necessary to eject them from his property, and prevent injury thereto, but not to arrest them and incarcerate the wrongdoer. The right of a private citizen to make an arrest is fixed by statute, and even though Cox was running Martin's goats, appellant would have no right to make an arrest, convey him to the county seat and have him incarcerated in jail. If Cox was running Martin's goats, as an employé of Martin, he would have the right to demand that he cease, and use such force as necessary to accomplish that purpose, but no more, and when he arrested Cox and conveyed him to jail, he exceeded the rights the law gave him, and the arrest was illegal and wrongful. One cannot justify his illegal and wrongful act by showing that the other party was also engaged in an illegal act.

[3, 4] But a more difficult question is presented when he contends that he had a right to introduce this evidence in mitigation of the punishment to be assessed against him. If one rides up on another injuring or seeking to injure his property, and in the heat of the moment he steps beyond the limits of the law, and arrests the offender, we are inclined to think he could show such facts in mitigation of the punishment to be assessed against him—that he did so to prevent an injury to his property. Staples v. State, 14 Tex. App. 141. But we think it would be only in those character of cases, and where one acts from the impulse of the moment in making an arrest, that such wrongful act of the person arrested can be pleaded in mitigation of the punishment. This case does not come within that character of case. If the allegations of the bills are to be accepted as true, Cox on a number of occasions before this instance had been running the goats of Martin, of which fact appellant and Leifeste were aware. No report had been made of this conduct to any officer, and no complaint filed against Cox for so doing; and on this occasion appellant and Leifeste stationed themselves behind a clump of bushes, one with a rifle and the other a pistol, and arrested Cox, deliberately undertaking to take the law into their own hands. Out of such conduct homicides occur, and the law cannot lend its sanction to such conduct. If Cox was violating the law as appellant claims in the bills, the law prescribes a punishment, and prescribed the mode and method for appellant to proceed to have such punishment assessed against him, and which doubtless will be assessed, if Cox violated the law. His conduct on that occasion will be the issue when his case comes on for trial, and the fact that appellant illegally arrested him will furnish Cox no justification nor mitigation. The general rule is as stated by Mr. Archbald:

"All the prosecution has to prove is the imprisonment, for that is presumed to be unlawful until the contrary is shown. It is for the defendant to justify it by proving that it was lawful." 2 Arch. 293; Kirbie v. State, 5 Tex. App. 60.

There was no evidence introduced or offered tending to show that the arrest was lawful, or that appellant had any authority to make the arrest. And the record as a whole would tend to show that the evidence rejected as stated in the bills would not tend to show any ground for mitigation of the punishment, for the evidence would all tend to show, if admitted, that the arrest was not made to protect property, but for other reasons and purposes. These bills present no error.

[5] The only other bill in the record complains that the jury in deciding what punishment they would assess, discussed the fact that if only a pecuniary fine was assessed the ranch owner would likely pay it, and appellant receive no punishment, and in order to be sure that he received some punishment they assessed a jail penalty. This was not receiving additional testimony, but was discussing a matter they had a right to consider, and the bill presents no error.

The judgment is affirmed.

---

CONSUMERS' LIGNITE CO. v. GRANT.*
(No. 7421.)

(Court of Civil Appeals of Texas. Dallas. Nov. 27, 1915. Rehearing Denied Dec. 24, 1915.)

1. STATUTES ☞114—WORKMEN'S COMPENSATION ACT—CONSTITUTIONALITY.

The Workmen's Compensation Act (Acts 33d Leg. c. 179), entitled "An act relating to employers' liability and providing for the compensation of certain employés and their representatives and beneficiaries, for personal injuries" and death in the course of employment, etc., is not violative of Const. art. 3, § 35, providing that no bill shall contain more than one subject, which shall be expressed in its title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 145, 147–149; Dec. Dig. ☞114.]

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error pending in Supreme Court.

2. CONSTITUTIONAL LAW ☞245, 301 — MASTER AND SERVANT ☞16½, New, vol. 16 Key-No. Series—WORKMEN'S COMPENSATION ACT—CONSTITUTIONALITY.

Workmen's Compensation Act, modifying the common-law defense of contributory negligence in a servant's action for injuries, by providing that it may be shown only in mitigation, and abrogating the defenses of assumed risk, and that the injury was caused by a fellow servant's negligence, is not unconstitutional as denying equal protection of the laws or taking property without due process.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 702, 848–850, 857; Dec. Dig. ☞245, 301.]

3. STATUTES ☞64—INVALIDITY OF PART.

The court is not warranted in declaring a whole statute void if its valid provisions are perfectly distinctive and separable from those that are invalid.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66, 195; Dec. Dig. ☞64.]

4. MASTER AND SERVANT ☞250¾, New, vol. 16 Key-No. Series—STATUTES ☞64—INJURY TO SERVANT — ACTIONS — PLEADING — WORKMEN'S COMPENSATION ACT.

In view of the provisions of the Workmen's Compensation Act that if any part thereof be held inoperative, no other part of it shall thereby be affected; that employés whose employers are not, at the time of an injury, subscribers to the insurance association, cannot participate in its benefits, but shall be entitled to bring suits and recover judgments against such employers for all damages sustained by reason of any personal injury; and that the provisions of section 1 of the act, denying to the employer the defense of the negligence of a fellow servant, and assumed risk, and modifying his right to avail himself of the right of the defense of contributory negligence, shall apply where the employer was not a subscriber to the insurance association—where the only effect claimed for the act by an injured servant in his action was that it rendered unavailable to the employer the common-law defenses, the plaintiff's allegations that defendant employed large numbers of employés and was not a subscriber to the insurance association were proper, and not erroneous as pleading an unconstitutional act, since, if the sections of the act authorizing the creation of the insurance association were in violation of the Constitution of the state, such sections could and should be eliminated without impairing the sections relating to contributory negligence, etc., relied upon by plaintiff.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66, 195; Dec. Dig. ☞64.]

5. APPEAL AND ERROR ☞1039 — HARMLESS ERROR—PLEADING.

In an injured servant's action against his employer who had not accepted the Workmen's Compensation Act, any error in the unnecessary allegations by plaintiff that defendant employed large numbers of employés, and that it was not a subscriber to the act, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent.Dig. §§ 4075–4088; Dec.Dig. ☞1039.]

6. MASTER AND SERVANT ☞185—SAFE PLACE TO WORK — NONDELEGABLE CHARACTER OF DUTY.

The duty resting upon a coal mining company to furnish a miner a reasonably safe place to work was nondelegable, and the negligence of a fellow servant, whose duty it was to timber the roof for the miner's protection, was the company's negligence.

[Ed. Note.—For other cases, see Master & Servant, Cent. Dig. §§ 385–421; Dec. Dig. ☞185.]

7. MASTER AND SERVANT ☞118—SAFE PLACE TO WORK—DUTY OF MASTER—PROGRESSIVE CHARACTER OF WORK.

Where a coal miner, when injured by a falling roof, was merely shoveling loose coal from the floor of the room in which he was working into a car, and had been engaged in that character of work practically all day, which work in no manner contributed to the injury, the case did not come within the rule that where a servant is engaged in work of a character progressively changing his environment, the master is not bound to protect him against dangers resulting from the changes.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 202, 209; Dec. Dig. ☞118.]

8. MASTER AND SERVANT ☞278—SAFE PLACE TO WORK—SUFFICIENCY OF EVIDENCE.

In a coal miner's action for injuries, evidence *held* sufficient to show that the roof of his room might have been made safe by the exercise of ordinary care.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972. 977; Dec. Dig. ☞278.]

9. TRIAL ☞260—INJURIES TO SERVANT—ACTION—INSTRUCTIONS.

In a coal miner's action for injuries by a falling roof, where the court correctly defined ordinary care, negligence, contributory negligence, preponderance of the evidence, and proximate cause, and submitted in proper form the issues whether plaintiff was injured by a falling roof; whether defendant's servants could have timbered such roof reasonably safe by exercise of ordinary care; whether such servants did, by timbering, make such roof reasonably safe; whether they exercised ordinary care by timbering, or otherwise, to do so; whether, if they did not make the part of the roof which fell on plaintiff reasonably safe, they were guilty of negligence in failing to do so; whether such negligence, if any, was the proximate cause of plaintiff's injuries; and whether he was guilty of contributory negligence; and the issue as to the amount of damages—which issues comprehended all issues refused by the refusal of special charges to the effect that defendant was not an insurer, and that it was not incumbent upon it to make the roof absolutely safe, but only to use ordinary care—the refusal of the requests was not erroneous, since the submission of the issues was as favorable and fair as defendant was entitled to, and required the jury to answer the specific questions sought to be asked by defendant.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ☞260.]

10. MASTER AND SERVANT ☞101, 102 — INJURY TO SERVANT—SAFE PLACE TO WORK—"ORDINARY CARE."

The "ordinary care" which a master must exercise to provide his servant with a safe place to work is that degree of care which a person of ordinary prudence would exercise in the same or similar circumstances.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. ☞101, 102.

For other definitions, see Words and Phrases, First and Second Series, Ordinary Care.]

11. TRIAL ☞251—INJURIES TO SERVANT—ACTION—INSTRUCTIONS—ISSUES.

In an action by a miner for injuries received from a falling roof, where the case was submitted on special issues, among which were issues requiring findings as to whether defendant could have supported the roof by timbering to make it reasonably safe, and whether defendant failed to exercise due care to do so, the refusal of the court to instruct specifically that it

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was not the employer's duty to make the roof absolutely safe, and that the employer was not an insurer of its employés' safety, but was only required to use ordinary care, was not erroneous, though the charges were correct, since that defendant was not an insurer and was not required to make the roof absolutely safe were principles of law for application by the court, knowledge of which by the jury was not essential.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. ☛251.]

**12. MASTER AND SERVANT ☛101, 102—SAFE PLACE TO WORK—MEASURE OF DUTY.**

A coal mining company is not an insurer of the safety of its employés, and need not render the roofs of rooms absolutely safe for the protection of those working therein.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. ☛101, 102.]

**13. TRIAL ☛252 — INJURIES TO SERVANT — INSTRUCTION—APPLICABILITY TO EVIDENCE.**

In a coal miner's action for injuries from a falling roof, where the evidence tended to show that shortly before the accident defendant's servants under duty to support the roof with timbers examined it and observed it was likely to fall, and that, by exercising ordinary care, they could have timbered it properly, the refusal of the instruction that the mere happening of an accident is not proof of negligence was proper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. ☛252.]

**14. APPEAL AND ERROR ☛1068 — HARMLESS ERROR—INSTRUCTION.**

In a coal miner's action for injuries from a falling roof, where the jury found that plaintiff was not guilty of contributory negligence, a charge that in estimating damages, if the jury should find that plaintiff was guilty of contributory negligence, they should diminish the amount of his damages in proportion to the amount of his negligence, if erroneous, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. ☛1068.]

**15. DAMAGES ☛216—INJURIES TO SERVANT—TRIAL—INSTRUCTION.**

In a coal miner's action for injuries in a slate fall, where the court, after telling the jury specifically and properly what they might consider in estimating damages, closed with the words, "and also any other facts in evidence, if any," such charge was not erroneous, as it did not constitute an affirmative misdirection of the jury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 548–555; Dec. Dig. ☛216.]

**16. APPEAL AND ERROR ☛1062—HARMLESS ERROR—REFUSAL OF SPECIAL ISSUE.**

In a coal miner's action for injuries, where the court submitted the issue whether the plaintiff was guilty of contributory negligence, which, together with the instructions in relation to it, comprehended a requested issue whether plaintiff exercised ordinary care, the jury finding the plaintiff was not guilty of contributory negligence, the court's action in refusing the submission of the issue of ordinary care was without injury to defendant, since the issue, in substance, was submitted in a way to invoke the jury's finding on it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. ☛1062.]

**17. TRIAL ☛350—REFUSAL OF ISSUE.**

In a coal miner's action for injuries, where the evidence was insufficient to justify a find-ing that plaintiff's leg was paralyzed, or he was otherwise injured as a result of disease, the refusal to submit the issue whether his injuries were the direct result of any cause other than the fall of coal on his back was proper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. ☛350.]

**18. DAMAGES ☛132—PERSONAL INJURIES—EXCESSIVE VERDICT.**

Where plaintiff, a coal miner, a strong and healthy young man regularly earning $3 a day, was injured by the fall of a piece of coal upon his back and hips, which rendered him insensible and injured the vertebræ and connecting nerves so as to produce almost constant hiccoughing and much physical and mental suffering and paralysis of the leg, the injuries being permanent, rendering plaintiff a cripple for life and incapable of earning a livelihood, verdict for $11,000 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. ☛132.]

**19. NEW TRIAL ☛108—GROUNDS—NEW EVIDENCE.**

Where, after verdict for plaintiff coal miner, in his action for injuries, based on showing in evidence that he had been rendered a cripple for life, defendant mining company produced the evidence of one who stated that he had seen plaintiff fishing without a crutch five miles from home, and that he thought it was him, but might have been mistaken, the refusal of new trial on the ground of newly discovered evidence was not an abuse of the court's discretion.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 226, 227; Dec. Dig. ☛108.]

**20. MASTER AND SERVANT ☛278—INJURIES TO SERVANT—SUFFICIENCY OF EVIDENCE.**

In coal miner's action for injuries from a falling roof, evidence *held* sufficient to support judgment against defendant mining company for $11,000.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ☛278.]

Appeal from District Court, Wood County; Barney Briggs, Judge.

Action by Howard Grant against the Consumers' Lignite Company. Judgment for plaintiff and defendant appeals. Affirmed.

Harris & Britton, of Quitman, and Seay & Seay, of Dallas, for appellant. W. W. Campbell, of Alba, and Jas. M. Edwards, of Tyler, for appellee.

TALBOT, J. The appellant, a mining corporation, prosecuted this appeal from a judgment rendered in the district court of Wood county, Tex., in favor of the appellee, Grant, one of its employés, for personal injuries received through the negligence of appellant.

The appellee, at the time of his injuries, was shoveling coal into a car standing on the track in what is called a "room" of defendant's mine. He was injured by a piece of coal, forming what is designated as a part of the roof of the room, falling upon his head, back, and hips. The appellee testified that he estimated the weight of the coal that fell upon him at about 75 pounds, while a witness who saw the coal after it fell estimated its weight at about 15 pounds. The appellee had excavated the room by mining the coal

during a period of about two months next preceding the time he was injured, which was the 23d day of July, 1914, and the room at that time was 14 feet wide and extended back from the entry about 90 feet. A track for pit cars, connecting with another track in the entry and extending lengthwise the room, equidistant from the side walls, terminated about 6 feet from the "face" of the coal. Robert Chaney, the "pit boss" of the mine, George Churchwell, the head timberman, and several timbermen were agents and servants of defendant whose duty was to examine the roof of the mine and properly support with timbers such portions thereof as were found likely to fall; Chaney was foreman over all the miners and timbermen, and the testimony showed that he had authority to hire and discharge defendant's servants, but he denied having this power at the time in question. On Monday, next before the time of the accident, while Robert Chaney was with the plaintiff in said room of the mine, they heard the roof "pop." This indicated that the roof was unsafe, and plaintiff then requested Chaney to have it supported with timbers. Chaney then "sounded" the roof, but nothing was done toward timbering it until the following Thursday. On the intervening Tuesday a timberman brought into the room five timbers for supporting roofs and threw them on the floor, where they remained. On Wednesday and again early Thursday morning about two hours before he was injured plaintiff complained to head timberman Churchwell that the roof of said room was dangerous, and requested him to timber it. Soon after this last request Churchwell and another timberman went into the room to examine and timber the roof. Referring to this occasion, Churchwell, introduced by defendant, testified:

"It was my business when I went in there to timber the roof after receiving this message from the plaintiff, to examine the roof so as to determine what was necessary and timber it so as to make it safe for Grant to work in the room."

Plaintiff did not know, and had not designated, what particular portions of the roof needed timbering; he had merely reported that the roof was likely to fall, and requested that it be timbered; it was "in a swing" and wholly without support. These timbermen found portions of the roof which they recognized as being likely to fall. They undertook to support some of the same, using for that purpose three of the timbers which had been brought into the room on the previous Tuesday, and no others, leaving the other two on the floor. They erected two of these timbers on the left, and the other on the right, side of the track (looking into the room from the entry). These timbers were straight pieces 6 inches square at the bottom, 4 inches square at the top, and 6 feet long. Each of them was erected with only a piece of plank 2 feet long and 6 inches wide and 2 inches thick resting on top of it as a cap and up against the roof. The timbers

erected on the left side of the track were placed about 16 inches from the nearest rail, and, respectively, about 6 and 10 feet from the "face" of the coal; the timber erected on the right side of the track was placed about 16 inches from the nearest rail and about 10 feet from the "face" of the coal.

There was testimony for defendant to the effect that only one of the timbers was erected on the right side thereof about 6 and 10 feet, respectively, from the "face" of the coal. Churchwell and his helper, in examining and undertaking to support the roof at said time, discovered and recognized as being likely to fall another portion of the roof, about 2 feet toward the "face" of the coal from the timber erected on the right side of the track, and they made no effort to support the same, but left it wholly unsupported. The evidence showed without conflict that this portion of the roof fell upon and injured plaintiff while he was under it engaged in his work a short time after Churchwell and his helper had finished timbering the roof. They testified that it was impracticable to support this portion of the roof, either by means of an upright timber or a timber erected horizontally with its ends resting on uprights, called a "collar bar," or timbers extended from one collar bar to another, called "lagging," or in any other way, because, in their opinion, the same was so near the "face" of the coal that any timbers erected to support it might be knocked down in blasting the coal, or might interfere with mining it. They further testified that when they had finished timbering the roof they still regarded this portion of it as being dangerous, and that they warned plaintiff to watch it. There was then lying on the floor at and in the vicinity of a place under this dangerous and unsupported portion of the roof some loose coal which plaintiff had "blasted" the previous afternoon, and which he had to load into a car on the track, all of which said timbermen knew. They did not warn him to avoid getting under that portion of the roof, nor indicate that its danger was so imminent as to forbid his working under it for the short time required to load said loose coal into the car. But little of this loose coal then remained, three cars of it having been loaded and hauled out that morning before plaintiff suspended his work for the timbermen to do theirs. These men were engaged in timbering the roof only a few minutes, during which time plaintiff, according to his testimony, was at his bunk in the entry. When the timbermen finished their work and left the room, plaintiff, believing that they "knew what they were doing, and had made the roof safe enough to keep it from falling," resumed his work of shoveling the loose coal into a car near the terminus of the track. It was difficult to "watch" the roof while doing this work; the room was "pitch" dark, and the only light

was a small one carried on plaintiff's head. While he was stooping over shoveling the loose coal into the car the said dangerous and unsupported portion of the roof suddenly fell upon him without any sound or other premonition of the fall. He thus received serious and permanent injuries which have caused him great suffering, and resulted in paralysis of his leg. The defendant contended and endeavored to show that the paralysis resulted from some disease, or from his being thrown by a mule or from a wound with a pick in his foot, both of which accidents occurred within a period of about three months before the one in question. All of the timbers erected in the room remained standing after the accident; none of them had been in any way disturbed.

The plaintiff, who had worked in defendant's mines about 4 years, and H. W. Seaton, who had worked in defendant's mines about 17 years, much of the time as timberman and pit boss in defendant's said mine, testified, and there was other testimony tending to show, that the timbers and method employed by Churchwell and his helper in timbering the roof at said time, and the extent of support which they gave it, were wholly inadequate and improper in the conditions and circumstances shown by the evidence; that it was entirely practicable to support the portion of the roof which fell with a collar bar or with lagging, in the manner above explained, without interference with the mining or danger of knocking down the timbers by blasting, and that said portion of roof should have been supported in this way; that it was customary and proper to support such dangerous portions of roofs, though nearer the "face" of the coal than the one in question, with collar bars or lagging, and that if said portion of said roof had been thus supported, it could not have fallen.

C. E. Smith, who had been working in mines about 24 years, introduced by defendant, testified that it would have been practicable and proper to support said portion of roof with a collar bar or lagging, and that if it had been so supported, plaintiff could have avoided the possibility of knocking down the timbers by confining the blasting to a little narrower space in the "face" of the coal, and that if it had been so supported, it could not have fallen, and that, in any event, it would have been practicable and proper to support said portion of the roof with a collar bar or lagging temporarily, at least, so as to make it safe for plaintiff to work under it in loading the loose coal into the car.

The case was submitted to a jury on special issues, and upon their findings the court rendered judgment in favor of the appellee for the sum of $11,000. The jury found that appellee was injured by the falling of a portion of the roof of the room in which he was working upon him; that the appellant's employés, whose duty it was to timber danger-

ous portions of the roof of the mine, when notified of the same, "could" and "would" have so timbered said roof that fell on appellee, as to make and maintain the same in a reasonably safe condition by exercising ordinary care so to do before the time appellee was injured; that said employés of appellant did not, by timbering the portion of the roof that fell on appellee, or in any manner, make or maintain the same in a reasonably safe condition; that said employés of appellant did not exercise ordinary care, by timbering said portion of the roof that fell on appellee, or in any other manner, to make or maintain the same in a reasonably safe condition; that in failing to so timber that portion of the roof that fell on appellee as to make and maintain the same in a reasonably safe condition, the appellant was guilty of negligence; and that such negligence was the proximate cause of the injuries sustained by appellee. The jury further found that appellee was not guilty of contributory negligence, and that his injuries were not the proximate result of his having been thrown from a mule or a wound inflicted on his foot with a pick, and that by reason of his injuries he had suffered damages in the sum of $11,000, the amount for which judgment was rendered.

[1, 2] The appellee alleged that at the time of his injuries he was in the service of the appellant, digging coal in its mines; that he was not a domestic servant, nor a farm laborer, and that the appellant was not engaged in the operation of a cotton gin, but was a mining corporation employing, on an average, 300 persons daily in and about its mines, and was not a subscriber to the Texas Employers' Insurance Association, as provided for under the laws of the state of Texas. To that portion of these allegations which aver that appellant was not a subscriber to the Texas Employers' Insurance Association provided for under the laws of this state, appellant specially demurred on the ground that said allegations were—

"immaterial, unnecessary and calculated to confuse, excite and prejudice the jury against the defendant, and set forth a matter of defense incumbent upon appellant to plead in the event of a necessity therefor."

This special demurrer was overruled by the court, and the appellant in the twenty-second paragraph of its motion for a new trial charged, in addition to the grounds of complaint set up in said demurrer—

"that the law, or so-called law, attempted to be pleaded upon this defendant is unconstitutional and void and of no effect, in that it is class legislation and violates, and is in conflict with, the Fourteenth Amendment of the Constitution of the United States, and attempts to deprive persons of right, liberty, and property without due process of law, and denies to persons in the jurisdiction equal protection, and violates section 19, art. 1, of the Constitution of the state of Texas, which prohibits a citizen from being deprived of right, liberty, property or immunities, or in any manner disfranchised, except by the course of law of the land, and violates section 28 of the Constitution of Texas,

which prohibits the power of suspending laws of this state, except by the Legislature, and violates section 35, art. 3, of the Constitution of the state of Texas, to the effect that no bill shall contain more than one subject, which shall be expressed in its title, and violates that provision of the Constitution which declares that no corporation shall be created except by general law."

The overruling of said special demurrer, and twenty-second paragraph of appellant's motion for a new trial, is made the basis of its first assignment of error, and the propositions advanced are:

"(1) It is error for an employé in a personal injury suit to plead and prove that the defendant employs large numbers of employés, and that it is not a subscriber to an attempted compensation act enacted by the Legislature, in that it is calculated to prejudice, excite, and confuse the jury; (2) any legislative enactment which is not permitted by the Constitution of the United States and is prohibited by the Constitution of the state of Texas is void and of no effect, and any legislative enactment which attempts to deprive persons of right, liberty, and property without due process of law, denies to persons in the jurisdiction equal protection, and deprives people of property, right, liberty and immunities, except by the course of the law of the land, and which provides that a bill shall not contain more than one subject, and deprives people of the right to the courts of the country and takes away the court to redress him for any injury done in his lands, goods, person, or reputation, and which permits any unreasonable seizure or searches, and which creates a corporation is void and of no effect, and cannot deprive persons of the rights given them by law prior to the attempted enactment of such legislation."

In disposing of this assignment and the propositions thereunder, we shall not enter upon an extended discussion of the question of whether or not the statute thereby attacked, being chapter 179 of the Acts of the Thirty-Third Legislature, and known as the "Workmen's Compensation Act," is unconstitutional. This act does not violate section 35, art. 3, of the Constitution of this state. It contains but one subject, which is expressed in its title. In Middleton v. Texas Power & Light Co., 178 S. W. 956, the Court of Civil Appeals for the Third District held that so much of said statute "as undertakes to deprive an employé of what otherwise would be his cause of action against his employer," and leaves the remedy optional with the employer, and "makes it compulsory as to the employé" whose employer had "elected to avail himself of the benefits" of the act was in violation of the Fourteenth Amendment of the Constitution of the United States, declaring that no state shall deny to any person the equal protection of the laws, and of article 1, § 19, of the Constitution of Texas, which declares that:

"No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

A contrary ruling seems to have been made by the Court of Civil Appeals for the Seventh District, in the case of Memphis Cotton Oil Co v. Tolbert, 171 S. W. 309, and, as the case of Middleton v. Texas Power & Light Co., supra, is now pending, as we understand, in the Supreme Court of this state on certified questions, and as we do not regard it essential to proper disposition of the appeal in the present case, shall express no opinion upon the question. If the ruling in Middleton's Case is correct, it does not follow that the trial court erred in overruling the appellant's exception to that portion of the appellee's petition of which it complained. The act of the Legislature in question expressly provides that, should any part thereof be for any reason held to be invalid or inoperative, no other part of it shall be thereby affected, and in view of this provision the Court of Civil Appeals of the Third District, in passing on Middleton's case, announced that it did not hold that the entire act was invalid or inoperative. Now in part 1, § 1, of said act of the Legislature it is provided that in an action to recover damages for personal injuries sustained by an employé in the course of his employment, it shall not be a defense: (1) That the employé was guilty of contributory negligence; but in such event the damages shall be diminished in proportion to the amount of negligence attributable to such employé; (2) that the injury was caused by the negligence of a fellow employé; (3) that the employé had assumed the risk of the injury incident to his employment; but such employer may defend in such action on the ground that the injury was caused by the willful intention of the employé to bring about the injury. Section 2 of said act reads:

"The provisions of this act shall not apply to actions to recover damages for the personal injuries * * * sustained by domestic servants, farm laborers, nor to the employés of any person, firm or corporation operating any railway as a common carrier, nor to laborers engaged in working for a cotton gin, nor to employés of any person, firm or corporation having in his or their employ not more than five employés."

And section 4 reads thus:

"Employés whose employers are not at the time of injury subscribers to said association * * * cannot participate in the benefits of said insurance association, but they shall be entitled to bring suits, and may recover judgment against such employers, or any of them, for all damages sustained by reason of any personal injury received in the course of employment, * * * and the provisions of section 1 of this act shall be applied in all such actions."

To thus by statute modify the common-law defense of contributory negligence, and abrogate the defenses of assumed risk, and that the injury complained of was the result of the negligence of a fellow servant, is clearly within the legislative power and not subject to the criticism that such legislation denies the equal protection of the laws or would take property without due process of law. Tullis v. Railway Co., 175 U. S. 350, 20 Sup. Ct. 136, 44 L. Ed. 192; Mondou v. Railway Co., 223 U. S. 49, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44; Rail-

way Co. v. Castle, 224 U. S. 544, 32 Sup. Ct. 606, 56 L. Ed. 875; Martin v. Railway Co., 203 U. S. 294, 27 Sup. Ct. 100, 51 L. Ed. 184, 8 Ann. Cas. 87. This is so for the reason that no person has a property right or vested interest in the common-law defenses nor in any rule of the common law. Cases cited above.

[3, 4] The appellant was not a subscriber to the Texas Employers' Insurance Association, and the only effect claimed for the act of the Legislature in question was that it rendered unavailable to appellant the common-law defenses of the negligence of a fellow servant as the cause of appellee's injuries, assumed risk, and contributory negligence; and whether any of its provisions other than those relating to such defenses be unconstitutional we regard as immaterial under the facts of the case in determining the rights of the parties thereto. This conclusion, aside from the general rule that the court is not warranted in declaring the whole statute void if the valid provisions thereof are perfectly distinct and separable from the invalid provisions, so that they are not dependent upon each other, is clearly justified by those valid provisions of the act under consideration declaring that, if any part thereof be held inoperative, no other part of it shall thereby be affected, and that employés whose employers are not at the time of injury subscribers to the said insurance association cannot participate in the benefits of said association, but shall be entitled to bring suits and recover judgments against such employers for all damages sustained by reason of any personal injury received in the course of employment, and that the provisions of section 1 of the said act, which deny to the employer unqualifiedly the defenses of fellow servant and assumed risk, and modifies his right to avail himself of the defense of contributory negligence, shall, in such cases, apply. So since the provisions of said act of the Legislature, depriving appellant of the defenses of fellow servant and assumed risk and qualifying the extent to which it could avail itself of the defense of contributory negligence, are not unconstitutional, and in view of the declaration in the act itself that its provisions should not apply to actions to recover damages for personal injuries sustained by domestic servants, farm laborers, nor to laborers working for a cotton gin, nor to employés of any person, firm, or corporation having in his or their employ not more than five employés, the allegations complained of by the assignment we are considering were proper, if not absolutely necessary, and the court's action in overruling the demurrer thereto furnishes no sufficient ground for a reversal of the case. If the sections of the act authorizing the creation and regulation of the Texas Employers' Insurance Association be in violation of the Constitution of this state as to the creation of private corporations, a question we do not decide, they may be eliminated without impairing the sections relating to contributory negligence, assumed risk, and fellow employés. Memphis Oil Co. v. Tolbert, supra.

[5, 6] But it could be said that the allegations of the petition complained of were unnecessary or even improper, it does not appear that appellant has suffered any injury by reason thereof. On the contrary, it safely may be said that it is reasonably certain that appellant sustained no injury whatever, by reason of said pleading. The charge that it was calculated to confuse, excite, and prejudice the jury against appellant is not, we believe, supported either by the nature or language of the allegations, nor by anything else disclosed by the record; and the jury found absolutely that the appellee was not guilty of contributory negligence, and the defense of assumed risk was not pleaded, and hence not an issue in the case. Nor was the evidence sufficient to authorize a finding that the negligence of a fellow servant caused the injuries inflicted upon appellee. The duty resting upon appellant to exercise ordinary care to furnish appellee a reasonably safe place to work was nondelegable, and the servant of appellant whose duty it was to supervise and have timbered the roof for appellee's protection and who undertook, just before appellee was injured, to discharge that duty was the vice principal of appellant, and any negligence on his part, or of those engaged with him, in propping or timbering the roof was the negligence of appellant.

[7, 8] Appellant's second assignment of error complains of the court's refusal to give a special charge, directing the jury to return a verdict in its favor. It is contended, in effect, under this assignment: (1) That the evidence showed without contradiction that the appellee was engaged in work of a character, as it progressed, that his environment was necessarily undergoing frequent changes and the appellant was not bound to protect him against the dangers incident to or resulting from those changes; (2) that the evidence disclosed an uncontroverted case of assumed risk and contributory negligence on the part of appellee, and that the negligence, if any, which caused the appellee's injuries was the negligence of his fellow servant, save and except for the unconstitutional statute passed by the Thirty-Third Legislature, and known as the Workmen's Compensation Act; (3) that the appellant was only required to exercise ordinary care to make and maintain the place where appellee was at work when hurt reasonably safe, and that as the evidence disclosed that such place could not be made safe by the exercise of ordinary care, it was incumbent upon the trial court to give the peremptory instruction requested, directing

the jury to return a verdict for appellant; (4) that proof of the failure on the part of the appellant to adopt any peculiar method of timbering the rooms in its coal mine where appellee was at work does not show negligence, and, there being no evidence of negligence otherwise, the peremptory instruction should have been given. None of these contentions should, in our opinion, be sustained. Those to the effect that the uncontroverted evidence showed a case of assumed risk and contributory negligence on the part of the appellee, and that the negligence, if any, which caused the appellee's injuries was the negligence of his fellow servant, have been disposed of contrary to the views expressed by appellant, by what we have said in discussing the first assignment of error. And as to the contention that the work in which appellee was engaged when injured was of such a character that as it progressed the environment of appellee was necessarily undergoing frequent changes, and therefore it was the duty of the court to give the peremptory instruction requested by appellant, it may be said that the evidence, as we understand it, not only did not conclusively show that the work in which appellee was engaged at the time of his injuries materially changed his environment or situation with reference to safety, but failed to raise such an issue. The undisputed evidence as we gather it from the statement of facts shows that when injured appellee was merely shoveling loose coal from the floor of the room in which he was working into a car; that he had been engaged in that character of work practically all that day, and that he did not, by his labor or otherwise, in any manner cause or contribute to the falling of the coal from the roof that resulted in his injury. It appears, as pointed out by appellee's counsel, without dispute, that about two hours before appellee was injured the servants of the appellant whose duty it was to support with timbers dangerous portions of the roof actually discovered that the portion thereof which fell on appellee was likely to fall upon and injure him while he was engaged in the work required of him, and clearly warranted the conclusion that by exercising ordinary care these men could and would have timbered said portion of the roof in a manner that would have efficiently supported it and prevented the injury. The appellee sought to, and evidently did, recover upon the ground that it was the duty of appellant, upon actual notice and knowledge that the roof of the room in which appellee was working had become and was still dangerous, to exercise ordinary care, by timbering the dangerous portions thereof, to render the roof reasonably safe, and that appellant had failed to discharge that duty and thereby caused appellee's injury. It is unquestionably well settled that when the work is of such a char-

acter that, as it progresses, the environment of the servant must necessarily undergo frequent changes, the master is not bound to protect the servant engaged in his employment against the dangers resulting from those changes; but to render applicable this exception to the rule requiring the master to exercise ordinary care to furnish his servant a reasonably safe place to work arises only when the servant's environment or situation with reference to safety is frequently changed and made dangerous by his labor. The evidence showing that appellee's situation with reference to his safety was not changed and made dangerous by the labor in which he was engaged, the exception to the general rule referred to has no application in this case. In the respect just mentioned the case differs from the case of Adams v. Consumers' Lignite Co., 138 S. W. 1178, and similar cases cited by appellant, and those cases cannot be relied upon to support appellant's contention.

For the foregoing reasons there was no error in refusing to submit to the jury the special issues to which appellant's third and fourth assignments of error relate, and in refusing the special charge bearing upon those issues, the refusal of which is made the basis of appellant's fifth assignment of error.

[9-12] By its sixth and eighth assignments of error the appellant complains that the court erred in refusing special charges that appellant was not an insurer of the safety of its employés, and that it was not incumbent upon it to make the roof of the room in which appellee was working absolutely safe, but only to use ordinary care to make the same reasonably safe, and in refusing to submit at appellant's request the special issue whether appellant exercised ordinary care in regard to the safety of the roof. In view of the issues submitted and the instructions given for the guidance of the jury in their determination, there was no error in refusing these requests of the appellant. The record discloses that the court correctly defined ordinary care, negligence, contributory negligence, preponderance of the evidence and proximate cause, and submitted in proper form the issues: First, whether a portion of the roof of the room in which appellee was working fell on him and injured him; second, whether the appellant's servants whose duty it was to timber dangerous portions of the roof could and would have so timbered the same as to maintain said roof in a reasonably safe condition by exercising ordinary care so to do; third, whether appellant's said servants did, by timbering or in any manner, make said roof, or the portion thereof that fell on appellee, reasonably safe; fourth, whether said servants exercised ordinary care, by timbering or in any manner, to make said roof reasonably safe; fifth, whether, if they did not make the portion of the roof which

fell on appellee reasonably safe, they were guilty of negligence in failing so to do; sixth, whether such negligence, if any, was the proximate cause of appellee's injuries; seventh, whether the appellee was guilty of contributory negligence; and eighth, the issue as to the amount of the damages sustained by appellee. These issues submitted comprehended the issues refused, all the issues of fact upon which appellee's right of recovery depended, and there was at least no necessity for the protection of the appellant's rights to have any one of them submitted again and in the form requested by appellant. The court correctly told the jury that ordinary care was that degree of care which a person of ordinary prudence would exercise in the same or similar circumstances, and submitted to the jury, as has been seen, the issues whether the appellant's servants or employés whose duty it was to timber the roof in question could, and whether they would, have so timbered it as to maintain it in a reasonably safe condition by exercising ordinary care so to do, and whether said employés exercised ordinary care by timbering or in any manner to make said roof reasonably safe. The jury's findings are that appellant's said employés could and would, in the exercise of ordinary care, have so timbered the roof as to make and maintain it in a reasonably safe condition. The submission of these issues in the manner and form they were submitted by the court was as favorable and fair as appellant was entitled to have them submitted, and required the jury to answer the specific question sought to be asked them by appellant and refused by the court. That the court declined to instruct the jury specifically that it was not the duty of appellant to make the roof absolutely safe, and that the appellant was not an insurer of the safety of its employés, but was only required to use ordinary care in that regard, furnishes no sufficient reason, since the case was submitted on special issues, for a reversal of the case. It is correct to say that the appellant was not an insurer of the safety of its employés, and that it was not incumbent upon it to make the roof in question absolutely safe for the protection of its employés working in its mine, but the case having been submitted on special issues, among which were issues requiring findings of the jury as to whether or not the appellant could and would, by the exercise of ordinary care, have so supported the roof of the room in which appellee was engaged in performing his duties, by timbering the same, as to make it reasonably safe, and that appellant failed to exercise such care to do so, it was not necessary to so tell the jury to enable them to properly pass upon any issue in the case. That appellant was not an insurer of the safety of its employés, and was not required to make the roof absolutely safe, were principles of law in such case for the application of the court, knowledge of which on the part of the jury was not essential to the rendition of a proper verdict on the issues involved.

[13] It is also assigned that the court erred in not instructing the jury, as requested by appellant, that the mere happening of an accident is not proof of negligence on the part of appellant. There was no error in this action of the court. The evidence did not call for such an instruction. Independently of the accident the evidence tended to show, as is pointed out by appellee, that very shortly prior thereto the servants of appellant, upon whom rested the duty of supporting the roof with timbers in the event of its becoming dangerous, examined the portion of the roof that fell on appellee, and observed that it was likely to fall, but failed to support it; that by exercising ordinary care they would have timbered it properly; and that if they had done so, the accident in all probability would not have happened.

[14, 15] The court instructed the jury that in estimating the damages sustained by appellee to take into consideration the nature and extent of the injuries which the evidence showed he had sustained as the direct result of the negligence, if any, of appellant's servants, such physical and mental pain suffered in consequence of such injuries, and any impairment of appellee's ability to labor and earn money which they found from the evidence directly resulted from such injuries, "and also any other facts in evidence, if any," and that if the jury should find that appellee was guilty of contributory negligence, it would then be their duty to diminish the amount of his damages, in proportion to the amount of negligence attributable to the appellee. The appellant challenges the correctness of that portion of the charge mentioned, and asserts that the court should have limited the consideration of the jury to the injuries that were the proximate result of the alleged negligence and to the amount of money the appellee might have earned in the past and in the future, and to mental and physical pain suffered, and should not have permitted the jury to consider "any fact that might be in evidence in fixing the amount of appellee's damages; that the statute (chapter 179 of the Acts of the Thirty-Third Legislature) upon which rests the instruction to diminish the amount of recovery, instead of finding for appellant, is unconstitutional and void. Clearly, the effect of the charge is to limit the consideration of the jury to the injuries that proximately resulted from the alleged negligence of the appellant and to the physical and mental pain suffered by appellee as the direct or proximate result of such injuries, and if the language of the charge is slightly variant from the stereotyped or usual one authorizing a recovery for impairment of ability to labor and earn money, it was favorable to appellant, or at least resulted in no injury to it. The main objection urged, as we understand the position of appellant, is to that portion of the charge which per-

mitted the jury to consider, in arriving at the amount of appellee's damages "any other fact in evidence" bearing upon that issue, and to that portion directing the jury, in the event they should find that appellee was guilty of contributory negligence, to diminish the amount of his damages in proportion to the amount of negligence attributable to him, instead of telling the jury in such event to return a verdict absolutely for appellant. This latter objection to the charge is based upon appellant's theory that the act of the Thirty-Third Legislature, to which we have heretofore referred, is unconstitutional, and in overruling the objection it is sufficient to here say that, inasmuch as the jury found that the appellee was not guilty of contributory negligence, the charge resulted in no injury to appellant, and it is immaterial, in disposing of this contention of appellant, whether it was or was not unconstitutional and void. We are further of the opinion that the charge, after telling the jury specifically what they might consider in estimating the amount of damages, was not materially erroneous, in closing with the language "and also any other facts in evidence, if any." We do not wish to be understood as unqualifiedly approving the use of the language in question in the position in which it appears in the charge, and think it would have been better had it been omitted altogether, but we do not believe it can reasonably be said that it resulted in injury to appellant. It must be presumed that the jurors trying the case were men of average intelligence, and it cannot fairly be said they were misled by the charge into the error of allowing compensation for any injury other than the one designated in the charge or for a greater amount than the evidence bearing upon those issues authorized. In Knittel v. Schmidt, 16 Tex. Civ. App. 7, 40 S. W. 507, a charge which the appellant claimed directed a double recovery was under consideration, and the court in holding against such contention, said:

"It is hardly to be supposed that a jury of the commonest intelligence would conceive it to be right and proper to allow compensation twice for the same loss. On such questions as this, it is fair to allow something for the intelligence of the jurors, and to assume that common sense would save them from the commission of such an error, unless the court, by its charge, should misdirect them."

The charge here under consideration did not constitute an affirmative misdirection of the jury, and the language just quoted is applicable. The appellee cites Railway Co. v. Kelton, 28 Tex. Civ. App. 137, 66 S. W. 887, as authority sustaining the charge under consideration. The charge in that case on the measure of damages is not set out in the published opinion of the court, but counsel for appellee states that from the transcript he copied it in his brief. As thus copied, it appears that the court instructed the jury, in substance, that if they found for plaintiff, to take into consideration the nature, character, and extent of the injuries which they found from the evidence plaintiff had sustained, any pain or suffering which the evidence showed was caused him thereby, any impairment of his ability to labor and earn money, "and all the other facts and circumstances, if any, in evidence," and therefrom ascertain and decide what amount of cash money would be a fair compensation for the injuries sustained. There is no material difference in this charge and the charge here complained of, and the court, as shown by its opinion, made the following statement with reference to the former:

"The charge in question is a fair presentation of the measure of damages, and is confined to the issues of the case."

[16] No injury resulted to appellant by the court's refusal to submit the issue:

"Did plaintiff, Howard Grant, exercise ordinary care for his own safety in acting in the manner in which he did just prior to and at the time of the accident?"

The court submitted the following issue to the jury:

"Was the plaintiff guilty of contributory negligence on the occasion or at the time in question?"

This issue and the instructions in relation thereto comprehended the requested issue whether the appellee exercised ordinary care, and the finding of the jury, as stated in a former part of this opinion, being that appellee was not guilty of contributory negligence, the appellant has had the benefit of the submission of the question and an answer thereto. Although not in the form requested by appellant, the issue was submitted in a way to invoke the jury's finding upon it, and the refusal to submit it as asked by appellant did not result in the rendition of an improper judgment.

[17] The court did not err in refusing to submit the issue whether appellee's injuries "are the direct and proximate result of any cause other than the fall of the coal or other substance on his back." There was evidence showing that appellee had been thrown by a mule and had been wounded in the foot by a pick, and that paralysis could occur from disease without traumatism, but the evidence was insufficient to justify a finding that appellee's leg was paralyzed, or that he was otherwise injured, as the result of disease. In response to appropriate questions and instructions the jury found that appellee's injuries did not result from a wound which he had received in his foot with a pick or a fall from a mule, and since the evidence was insufficient to authorize the submission of the issue in question, the refusal to submit it was proper.

[18] It is contended that the verdict is excessive, unwarranted by the evidence, and the result of passion and prejudice. To this view of the evidence and verdict we do not agree. There is nothing in the record to indicate passion or prejudice on the part of the jury, unless it be the amount of the ver-

dict, and in view of the nature and extent of appellee's injuries, as shown by the preponderance of the evidence, we do not believe it can fairly or justly be said that the jury was influenced or actuated by any such motive. The evidence discloses that appellee, prior to the accident resulting in his injuries, was a strong and healthy young man, regularly earning by his labor about $3 a day; that a heavy piece of coal fell on his back and hips while he was in a stooping posture, causing him to fall to the floor, and rendering him for a time insensible; that the blow thus received injured the vertebræ and connecting nerves so as to cause, as explained by the physicians who testified in the case, an enlargement extending inwardly from the spine and resultant irritation of nerves in the diaphragm, and producing almost constant hiccoughing, much physical pain and mental suffering, and paralysis of the leg; that these conditions or injuries are permanent, will make appellee a cripple for life, and render him incapable of earning a livelihood. Such being the character and effect of appellee's injuries, we would not be warranted in declaring the verdict excessive.

[19] It is further assigned that the court erred in refusing to sustain appellant's motion for a new trial based on the ground of newly discovered evidence. The evidence claimed to have been discovered since the trial, and upon which appellant relies, is that of one J. C. Rainwater, and is to the effect that on or about the middle of September, and after the appellee had filed this suit, he was seen walking near Moore Lake about five miles from the town of Alba in Wood county, Tex., carrying a fishing pole and string of fish, and was walking without any stick or crutch or anything else to aid him in walking. Upon the hearing of the motion for a new trial an issue was made as to the truthfulness of the alleged newly discovered evidence and oral testimony heard pro and con upon that issue. The witness Rainwater was an employé of the appellant, and it does not appear with certainty that his testimony could not have been discovered before the trial by the exercise of proper diligence. He testified, in substance, that about the middle of September, about 2 o'clock in the afternoon, after this suit was filed and before it was tried, he saw the appellee, Howard Grant, about five miles from his home, Alba; that he was carrying a string of fish in one hand and a fishing pole in the other, and that he was walking along without any walking stick or crutch; that the appellee was about 50 yards from him; that his wife was with him (witness), and he said nothing to her about seeing appellee; that he did not know whether his wife saw appellee or not; that she said afterwards that she did not. He further testified that

"in some cases I cannot see very well at night or against the sunlight," and that at the time he was looking at appellee the sun was shining in his face; that he could possibly have been mistaken about that being Howard Grant (appellee)—

"but I took it to be Howard Grant, and I believed it to be him. I could have been mistaken about it being Howard Grant. When I saw this man down there that I took to be Howard Grant, he did not have any crutch. That man, if he lived in Alba, had walked five miles from Alba out to that lake, and he, of course, had five miles to walk back."

In rebuttal the appellee introduced testimony, if true, that showed that if the witness Rainwater really saw a man near Moore Lake which "he took to be Howard Grant," such man was not Howard Grant. Now, it has frequently been held that the granting or refusing of a new trial on the ground of newly discovered evidence is, to a great extent, in the discretion of the trial judge, and his—

"refusal will not be revised by an appellate court, unless it appears that such discretion has not been exercised according to the established rules of law and the principles of adjudged cases." Mitchell v. Bass, 26 Tex. 372; Railway Co. v. Sciacca, 80 Tex. 350, 16 S. W. 31; Berger v. Kirby, 135 S. W. 1122.

It is clear, we think, that, in the light of the evidence adduced on the trial of this case and on the hearing of the motion for a new trial, we would not be warranted in saying that the trial judge, in refusing to sustain said motion, abused his discretion in the matter. When all of said testimony offered is fairly considered, it is not unreasonable to say that the testimony of the witness Rainwater was probably untrue, or that the man he saw was not appellee, and hence so inconclusive that in all probability it would not effect a different result upon another trial.

[20] We have examined very carefully all of appellant's assignments of error, with the conclusion reached that none discloses reversible error. The most, if not all, of those that have not been mentioned have been practically disposed of against appellant by what we have said in discussing other assignments. Believing the evidence supports the judgment and that no substantial injury has been done appellant by any ruling complained of, the judgment of the district court is affirmed.

Affirmed.