MISSOURI, K. & T. RY. CO. OF TEXAS v. BROWN.

(Court of Civil Appeals of Texas. Dallas. Oct. 28, 1911. Rehearing Denied Nov. 18, 1911.)

1. TRIAL (§ 296*) — INSTRUCTIONS — ERROR IN INSTRUCTION CURED BY GIVING OTHER INSTRUCTION.

In an action for injury to an employé, by moving a locomotive while he had his hand under it, fastening a latch connecting a turntable track with a switch track, an instruction, authorizing recovery without requiring a finding that defendant knew or should have known of plaintiff's position, was not erroneous, where the evidence showed that plaintiff was doing his work in the customary manner, and that the employé who caused the locomotive to move knew that plaintiff had gone to make the fastening, and where another instruction precluded recovery, if the employés in charge of the movement of the engine did not know of plaintiff's danger, etc.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 709; Dec. Dig. § 296.*]

2. DAMAGES (§ 216*)—PERSONAL INJURY—INSTRUCTIONS.

An instruction that plaintiff could recover such sum as would compensate him for the injury, and that, in estimating his damages, the jury might consider the mental and physical pain suffered, consequent upon such injury, etc., was not erroneous, as authorizing recovery for mental suffering and physical pain, other than that necessarily incident to the physical pain resulting from the injury.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 550; Dec. Dig. § 216.*]

3. DAMAGES (§ 159*) — PERSONAL INJURY — LOSS OF TIME—PLEADING.

Recovery for loss of time is authorized by allegations that plaintiff's hand and arm were so mangled as to require amputation; that before the injury he was able to earn $1.40 a day at work; that he was uneducated, and without means, and compelled to labor for a living; that his injury was permanent and incurable; and that his capacity to earn had been practically destroyed, etc.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 443; Dec. Dig. § 159.*]

4. APPEAL AND ERROR (§ 978*)—REVIEW—DISCRETION OF LOWER COURT — REFUSAL OF NEW TRIAL.

An order refusing a new trial for misconduct of the jury will not be disturbed, unless the trial court has clearly abused its discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3870; Dec. Dig. § 978.*]

5. NEW TRIAL (§ 44*) — GROUNDS — MISCONDUCT OF JURORS—JUDICIAL DISCRETION.

The trial court in a personal injury action did not abuse its discretion in refusing defend-

ant a new trial, on the ground that, after retiring to deliberate, jurors stated among themselves that plaintiff would have to divide his recovery with his attorneys, though most of the jurors testified to the misconduct, where others testified they did not hear any such remarks, or that the remarks did not influence their verdict.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. § 80; Dec. Dig. § 44.*]

6. DAMAGES (§ 132*)—PERSONAL INJURY—EXCESSIVE DAMAGES.

$15,000 recovery for loss of the right hand of a railroad laborer 27 years old is excessive by $5,000; he being uneducated, and having earned only $1.40 a day.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 383; Dec. Dig. § 132.*]

Appeal from District Court, Hill County; W. C. Wear, Judge.

Action by Joe M. Brown against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed conditionally.

Ramsey & Odell, Alex. S. Coke, and A. H. McKnight, for appellant. Frazier & Shurtleff, for appellee.

RAINEY, C. J. Appellee instituted this suit to recover of the appellant damages for personal injuries sustained by him while he was working as a laborer in the yards of appellant at Hillsboro, resulting in the loss of his right hand. Appellant answered by general denial, assumed risk, and contributory negligence. A trial resulted in a verdict and judgment in favor of appellee for $15,000, from which this appeal is prosecuted.

The evidence shows that appellee was injured while in the employment of appellant as a laborer in its yards at Hillsboro. At the time of the injury, appellee was assisting in the operation of a turntable. After said table had been turned, appellee placed his arm under the engine for the purpose of fastening a latch, which connected the turntable track with the switch track upon which the engine was to be placed, and while his arm was under said engine the employés of appellant negligently caused said engine to be moved forward without warning to him, thereby causing the wheels of said engine to run over and crush his hand, and so injuring it that amputation was necessary. There was testimony adduced by appellant that before the engine was moved appellee gave the word to move the engine, and that said engine was caused to be moved at that time by reason thereof; but this testimony is contradicted, and, the jury having found to the contrary, that issue is settled against appellant.

[1] Appellant urges error in the third paragraph of the court's charge, and submits the following proposition, viz.: "The third paragraph of the charge is erroneous in this: That it authorizes a verdict in favor of appellee if he was doing the work stated, and if

the engine was moved without a signal from him or a warning to him; whereas, under the law, the movement of the engine without such signal or warning would not be negligence, unless appellant knew or should have known of appellee's position of danger, or unless, by reason of some other fact, it was its duty not to move the engine without a signal from him, or without a warning to him; and therefore the jury should have been required to find further that appellant knew or should have known of appellee's dangerous position, or that it was otherwise its duty to give him warning, or to await a signal from him." We are of the opinion that the charge is not subject to the criticism urged, as the circumstances surrounding the accident justified the charge.

On the night of the accident, there was some trouble in getting the turntable properly adjusted, so the engine could run out on the proper track. One Dobbs was the engineer, and Simmons and Adams were assisting appellee in adjusting the turntable. Simmons testified: "I was giving the signals that night to the man on the engine, and he would respond and back up or come forward in response to the signals. He moved the engine upon the table first, and tried to take it off before the latch was put in. Then he backed back, and I gave him a signal. At that time Joe Brown was on the left-hand side of the engine. I couldn't see Brown at that time. Then he backed back on the table, and I gave him the come-ahead signal. I signaled to him to come ahead just a little. At that time I wanted to balance the table, and he didn't come far enough that time. After he moved her the first time, I fixed my side of the table, and then Joe told me to have her come ahead just a little, so he could fix his side, and I gave the signal to come ahead just a little, and in response to that signal the hostler ran the engine off the table. I had not signaled him to come off the table. I had given him the signal to come ahead a little, and, instead of responding to the signal I gave him, he ran off the table. Brown told me to bring her ahead a little, and after that I did bring her ahead a little, and it was not far enough, and then the hostler brought her ahead and ran off the table. Brown told me to bring her ahead the first time, and then again after that. I saw Joe Brown when he came around the engine that night [meaning after the accident]."

Appellee testified: "I was on the right-hand side, and the engine was backed on, and then I undertook to put the latch in. After the engine was backed on, I went around on the opposite side of the table, on the left-hand side of the engine; I mean the left-hand side of the engine, facing the front, just like we were running it. I left Simmons standing beside the pole on the right-hand

side of the engine. I went around on the left-hand side of the engine for the purpose of latching the track on that side of the engine. Simmons and Adams were both standing there on the right-hand side. One of them latched it on the other side, while I went to latch it on the left side. The engine is run from the right-hand side. That is the side the engineer sits on. The running gear, throttle, and brakes are on the right-hand side of the engine, and that is the side the engine is operated from, and is the side the hostler sits on. I was on the opposite side, and Simmons and Adams were on the right-hand side. It is not a fact that I told Simmons to move the engine forward a little. I never spoke to Simmons. It is not a fact that I told him to bring her ahead a little, so as to balance the table. * * * If the engine was to be moved forward for any purpose, Simmons and Adams, the men who were standing on the right-hand side of the engine, were the men to give the signal. There was only one man on the engine that I know of. The man on the engine would know when to move the engine by the signals that were given to him to pull her ahead. They had no regulation as to who would give the signals. The men working on the table are supposed to give the signals. The usual way was to put the engine on the table, and put the latch in and step back out of the way, and the one on the side where the hostler was asked if we were ready, and then give the signal to the hostler to go ahead. At the time I was hurt, I had stepped around to put the latch in, and had not said anything at that time."

This evidence shows that appellee was pursuing the customary way of making the fastening. Simmons knew he had gone to the left side of the engine to make the fastening, which he should have anticipated would be done in the customary way; and therefore he should not have signaled the engineer to move the engine, without warning to appellee that it was to be moved, or knew that appellee was in no danger. In this connection, the court, at the request of appellant, charged the jury as follows: "If you should believe from the evidence that a signal was given by the witness Simmons for the engine in question to be moved forward, and that said engine was moved by the witness Dobbs in compliance with said signal, and should further believe that at the time said signal was given and said engine was moved the employés of the defendant, having charge of the giving of said signal and the movement of said engine, did not know that the plaintiff's arm was under said engine, or that he was in a position of danger or peril, and by reason of said fact a person of ordinary prudence, under the same or similar circumstances, would not have warned or advised the plaintiff of the intended movement of said engine, then you are instructed to find against the plaintiff on the issue as to the alleged negligence of said employés in failing to warn or advise the plaintiff of the intended movement of said engine." The court's charge, when considered as a whole, fairly presented the issues raised to the jury, and the assignment of error, complaining of the third paragraph, is not sustained.

[2] The second and third assignments complain of the sixth paragraph of the court's charge, which reads: "If you find for the plaintiff, and believe from the evidence that he was injured, as alleged in his petition, you should allow him such a sum as you believe from the evidence will compensate him for the injury sustained, if any; and in estimating his damages, if you believe he has been damaged, you may take into consideration the mental and physical pain suffered, if any, consequent upon such injury, if he was injured, the value of the time lost, if he lost any time, in consequence of his injury, and if you believe from the evidence that said injuries are permanent and will disable him to labor and earn money in the future, then you may allow him such a sum as, if paid now, you believe from the evidence will be reasonable compensation for any diminished capacity, if any, to labor and earn money in the future." The charge of the court did not authorize a recovery for mental suffering and physical pain, other than that necessarily incident to the physical pain resulting from the injury, so there was no error in the charge, not limiting a recovery to physical pain resulting from the injury, as the evidence related only to such suffering.

[3] As to the proposition that it was error in the charge to submit to the jury an item of damage (loss of time), not covered by the allegations of the petition, we think the allegations of the petition authorized the submission of that issue. It alleged "plaintiff further shows that when said engine was caused to be moved the wheels of same passed over this plaintiff's hand and arm, mashing and mangling the same, and that as a result of said injury it was necessary to amputate his said hand and arm. * * * Plaintiff alleges: That he is a young man, 27 years old, and before said injury was able to do work and perform labor, and was able to earn and did earn the sum of $1.40 per day in the work he was then engaged in. That plaintiff is a man without education, and without means, and is compelled to resort to manual labor to earn a living. That said injury is permanent and incurable, and as a result of same his ability to labor and earn money in the future has been practically destroyed. * * * And that during all of said time his ability and capacity to labor and earn money will be greatly diminished, if not practically destroyed. Whereby plaintiff says that * * * on account of his diminished capacity to labor and earn money in the past and in the future he has been damaged in the sum of $40,000." These

alllegations, which were supported by the evidence, show loss of time beyond question, and which loss of time was a natural and necessary result of the injury alleged and shown. Railway Co. v. Barrett, 46 Tex. Civ. App. 14, 101 S. W. 1029; Railway Co. v. Ray, 28 S. W. 257.

[4, 5] Appellant complains of the refusal to grant it a new trial, because of remarks by jurors, after they had retired to consider of the verdict, that appellee would have to divide his recovery with his attorneys, as the size of the verdict indicates they were influenced thereby. On the hearing of the motion for new trial, most, if not all, of the jurors testified as to the misconduct while deliberating. Several of the jurors stated that the remark was made several times, when some other juror would say they had nothing to do with that, which would hush it up. Others testified they did not hear any such discussion, and others that said remarks did not influence their verdict. The statute leaves it to the discretion of the trial court to set aside a verdict for misconduct of the jury, and its action is final, unless its discretion has been abused. The appellate courts will not disturb a verdict, where the lower courts have refused a new trial for misconduct of the jury, unless the court has clearly abused the discretion reposed in it by the statute. We do not think there was such a clear abuse of discretion of the lower court as to justify us in holding that it was abused. Railway Co. v. Gray, 137 S. W. 729.

The remarks of counsel, made in their argument, and here assigned as error, do not warrant a reversal of the case.

[6] We are of the opinion, however, that the verdict of $15,000 is excessive, and not supported by the evidence for that amount. We think a verdict for $10,000 would be full compensation for the injuries received by appellee, and if the sum of $5,000 is remitted in 10 days the judgment will be entered for $10,000. If no remittitur is filed within that time, the judgment will be reversed, and the cause remanded.