KIRBY LUMBER CO. v. BRATCHER.
(No. 94.)

(Court of Civil Appeals of Texas. Beaumont. Dec. 14, 1916. On Motion for Rehearing, Jan. 24, 1917.)

1. MASTER AND SERVANT ⟳287(4)—INJURY TO SERVANT — NEGLIGENCE — QUESTION FOR JURY.

In a suit for injuries by the employé of a lumber company, question of negligence on the part of defendant's other employé snaking logs with a four-mule team, *held* for the jury; negligence being generally a question of fact, and becoming a question of law for the court only when the facts are undisputed and admit of but one inference.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1045, 1060; Dec. Dig. ⟳287(4).]

2. APPEAL AND ERROR ⟳1068(5)—HARMLESS ERROR—REFUSAL OF CHARGE.

In a servant's action for injuries, where the facts covered by a refused charge on assumption of risk were covered by the facts in a given charge on contributory negligence, and were found against defendant, the refusal of the charge on assumption of risk was harmless to defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4230; Dec. Dig. ⟳1068(5); Trial, Cent. Dig. §§ 475, 480.]

3. MASTER AND SERVANT ⟳177—INJURY TO SERVANT—NEGLIGENCE OF SERVANT.

Whether another employé of a lumber company snaking logs with a team of mules was negligent in taking a short cut from the prepared path was not determined by whether he could or would have reasonably foreseen injury to plaintiff when he took the short cut, but by whether, as a reasonably prudent man, in the exercise of ordinary care, and in view of all the facts and circumstances, he should have anticipated that some injury might occur.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 307, 352, 353; Dec. Dig. ⟳177.]

4. NEGLIGENCE ⟳101—INJURY TO SERVANT —CONTRIBUTORY NEGLIGENCE—STATUTE.

By Acts 33d Leg. c. 179 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), contributory negligence cannot be urged as a complete defense in a servant's action for injuries, but, if proven, diminishes the damage in proportion to the negligence attributable to plaintiff.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 85, 163, 164, 167; Dec. Dig. ⟳101.]

5. TRIAL ⟳194(7) — INSTRUCTION — WEIGHT OF EVIDENCE.

In a lumber company's servant's action for injuries, a charge was not on the weight of evidence which told the jury that there was a customary and proper passageway for the hauling of logs other than the way which defendant's mule driver took, a point undisputed in evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 446, 452; Dec. Dig. ⟳194(7).]

6. MASTER AND SERVANT ⟳291(13)—INJURY TO SERVANT—INSTRUCTIONS.

In an action for injuries by the servant of a lumber company, where the testimony showed that while the log that another employé was snaking, or the tongs hooked to it, struck a stump immediately before the log was jerked against the log which was on the skidway and which injured plaintiff, the court's general charge was not erroneous in that it submitted as an issue whether the log being snaked was pulled against the end of a log on the skids, while the evidence showed that the log was not pulled against the log on the skids, but was thrown against the skids by reason of the tongs coming in contact with the stump, since it was the dragging of the log which caused it to come in contact with the log on the skidway.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1145; Dec. Dig. ⟳291(13).]

7. MASTER AND SERVANT ⟳285(11)—INJURY TO SERVANT—INSTRUCTION.

In an action for injuries by a servant of a lumber company, where defendant's other employé, snaking logs, left the usual and customary road to make a short cut, and encountered a stump, which hit the log he was snaking, and threw it against a log on the skidway, to plaintiff's injury, a charge was not erroneous that submitted an issue whether the mule driver turned his team out of the usual and proper road on the ground that the undisputed evidence showed that there was no causal connection between the turning from the usual road and the contact between the log being snaked and the log on the skidway.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1035; Dec. Dig. ⟳285(11).]

8. MASTER AND SERVANT ⟳264(15)—INJURY TO SERVANT—INSTRUCTION.

In an action for injuries by the servant of a lumber company, where the testimony showed

that if another servant snaking logs with mules had followed the regular road he could not have struck with the log being snaked a log on a skidway which injured plaintiff, the court's general charge was not erroneous in that the issues therein submitted should not have been because there was a material variance between the pleading and the proof, in that plaintiff alleged that the servant snaking logs made a short turn without watching and taking precautions to prevent a collision between logs, while the evidence failed to show any such act or omission on his part.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 875; Dec. Dig. ⊚— 264(15).]

### On Motion for Rehearing.

9. MASTER AND SERVANT ⊚—236(13)—NEGLIGENCE OF SERVANT.

Where it was obvious to the employé of a lumber company, as another employé approached a skidway with a log being snaked by him, that there was a probability or likelihood that the log being snaked would strike a log on the skids, to the first employé's injury, and it would have been an easy matter for such employé to have avoided the injury by moving, but he failed to move away from the skidway, and thereby did not exercise such care as a person of ordinary prudence would have exercised, he was negligent, and could not recover if such negligence was the proximate cause of his injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 737; Dec. Dig. ⊚— 236(13).]

10. TRIAL ⊚—251(8)—INJURIES TO SERVANT—INSTRUCTION.

In an action for injuries by the employé of a lumber company, where the trial court charged correctly as requested on the effect of negligence on plaintiff's part in failing to move away from a skidway to which a log was being snaked, a charge on the issue of assumption of risk was properly refused defendant; the contention on plaintiff's part being that the lumber company's servant who was snaking the log committed a negligent act at the time of the injury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 593; Dec. Dig. ⊚—251(8).]

11. MASTER AND SERVANT ⊚—204(3)—INJURIES TO SERVANT — ASSUMPTION OF RISK — STATUTE.

A servant employed by a lumber company in snaking logs did not assume the risk of being struck by a log negligently handled by other servants, in view of Acts 33d Leg. c. 179, pt. 1, § 1 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246h), taking from employer the defense of assumed risk, where the risk is ordinarily incident to the employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 546; Dec. Dig. ⊚—204(3).]

Appeal from District Court, Liberty County; L. B. Hightower, Sr., Judge.

Suit by Ben Bratcher against the Kirby Lumber Company. From a judgment for plaintiff, defendant appeals. Judgment affirmed.

Andrews, Streetman, Burns & Logue, of Houston, for appellant. E. B. Pickett, Jr., and C. H. Cain, both of Liberty, for appellee.

BROOKE, J. This suit was brought in the district court of Liberty county, Tex., by Ben Bratcher, as plaintiff, against Kirby Lumber Company, as defendant, to recover damages for personal injuries alleged to have been sustained by him while in the employ of the Kirby Lumber Company at Fuqua, Tex., on or about the 31st day of December, 1913. The cause was tried by a jury, who on August 12, 1915, returned their verdict in favor of plaintiff for the sum of $3,333.35. Judgment was accordingly, on the same day, entered in favor of plaintiff against the defendant for the sum stated. In due course the defendant, Kirby Lumber Company, filed its original motion for new trial, and thereafter, with leave of the court, its amended motion for new trial, which motion was, on the 30th day of August, 1915, in all things overruled by the lower court. The defendant, upon the overruling of its said motion for new trial, gave notice of appeal to this court, and thereafter, in due course, filed its supersedeas bond and perfected its appeal.

The plaintiff, at the time he sustained the injury in question, was employed by the Kirby Lumber Company as a skidway man. His place of work was in the woods at a skidway to which logs were brought, and on which logs were placed preparatory to being loaded on log cars for transportation to the mill. On the day when he sustained his injury, logs were being brought to the skidway from the woods by a means known as "snaking," by which is meant the dragging of a single log at a time by a team with tongs attached to one of the logs. The plaintiff's duties with respect to the logs so "snaked" up to the skidway required him to be there with the cant hook when they dropped the log, or, as he says, "to take my cant hook and roll it down there so as to get the skidway filled." He had other duties to perform as skidway man. He was obliged to keep clear of all obstructions and in proper shape for use the regular passageway that the teams should follow when hauling or "snaking" the logs to be unloaded on the skidway, and as the driver of a team would haul the logs along that usual passageway, appellee's duty was to stand at the far end of the log as the driver approached, and signal him to stop whenever the log being "snaked" reached that point where its end would be about even with other logs already on the skidway. In circling the skidway upon which the logs "snaked" in from the woods were placed, was a pathway cut out for use by the carts when logs were being brought to the skidway by means of carts, and that pathway was also used regularly and customarily to get to the skidway when logs were being "snaked" in. The ground on the pathway which was used regularly and customarily to get to the skidway on the morning of appellee's injury had become muddy and boggy, and all the ground nearby was muddy and boggy, and the regular passageway, which was specially provided by the appellant as the route for its

employés to use in hauling and "snaking" in the logs, was free from obstructions of every kind, while the route taken by the driver, Edwards, at the time the log he was "snaking" struck against and caused another log to strike appellee, was obstructed with trees, stumps, and quicksand holes.

The testimony warrants the conclusion that a coemployé of the plaintiff, Edwards, driving the four-mule team "snaking" in the logs, instead of following the cart passageway on around to the skidway, cut across so as to reach the skidway, taking a nearer course. We here append a diagram produced upon the trial by the plaintiff, a reference to which will aid in getting a substantially correct idea of the facts existing at the time of the occurrence.

The directions of the points of the compass are indicated in the diagram by the letters N, S, E, and W. The circular line N, S, represents the pathway cut out for use of the carts. The several north and south lines on the inside of the circular line represent logs lying on the skidway. The lines which are between the letters T. & W. represent the tram track. The heavy black dot at the north end of the logs on the skidway represents the place where the plaintiff was standing at the time of the accident. The logs being "snaked" were being brought from the east of the skidway, and on the occasion of the accident Edwards, the coemployé, who was "snaking" in the logs, took a route to the skidway indicated by the line running from the circular line in a northwesterly direction to the logs on the skidway. When Edwards got to the logs on the skidway with the log he was drawing, the latter log came in contact with the end of the log on the skidway lying nearest the tram track, which latter log turned in such manner that the north end thereof came in contact with plaintiff's leg.

The regular and proper pathway at the time of the accident was muddy and boggy, but that did not render it any more difficult to drag the log that way than to follow the course Edwards took when appellee was hurt,

for, as said before, all the ground nearby was muddy and boggy. Edwards testified in this respect as follows: That the log he was "snaking" struck a stump which was from 4 to 12 inches high, and had been cut from a sapling about 6 inches in diameter, and that the top was not in the passageway that was just beyond this log (on the skidway), but just on the other side. The one he was traveling on was not in it. There was not a clear way through there, as there were some trees in there. That he was coming "kinder quartering," that place he was coming to, quartering with the logs that had been cut out. That some small saplings had been cut out in there, but the big timber had not been cut from in there. That was pine timber in there; a pine ridge. That it was full of those holes you find in pine thickets, a kind of ravine, large, boggy, quicksand holes, mud, and stumps. That just before he hit the stump he looked around. That as driver "snaking" in these logs, his duty was to handle the team and watch where his log was going. That he had to pick out the path for the log where he was in doubt, or likely to hit a stump, and try to avoid hitting them. That when he was coming up the track with that log he was watching the log and trying to keep it from hitting the stump.

For further explanation of the diagram, it would be well to state that the logs were being "snaked" from some distance east of the skidway, and as the drivers came from that point and into the circular pathway, they were expected to continue on that route so as to come between the tram track and the logs on the skidway from the south and the letter S marked on the diagram and the letter X also marked thereon near the letter S, explain Edwards' testimony that if he had traveled along that usual pathway, so marked with said letters, he would not have hit the stump which was struck by the log he was "snaking." The letter C, which appears in the diagram near the lower part thereof, indicates that when the fore end of the log struck the stump, the rear end of the log was at that point marked C upon the diagram.

The paragraph of the petition relied on as the basis for recovery is as follows:

"That plaintiff's said injury was due to and caused by the negligence of the defendant, in this: Upon the particular 'skidway' near which plaintiff was standing when hurt, as above alleged, there had been already placed about eight or ten logs in the proper and usual manner, that is, the logs had been properly rolled back to their place on the skidway and jammed close to one another; these logs were of forty-foot length; then next to those forty-foot logs upon the 'skidway' were three shorter logs, and next to these three short logs and nearest the tramway upon the 'skidway' was another log forty feet in length. And at the time of plaintiff's said injury, on account of very muddy and boggy ground, the logs were being dragged in one at the time, this method of hauling then being known as 'snaking' the logs; and at that time a driver by the name of Selman Edwards was driving one of

the teams that was 'snaking' the logs, and plaintiff in the due and proper performance of his duty as 'skidway man,' had taken a position near the north end of the three short logs on the 'skidway' as above mentioned, so as to be out of the way of the team and driver as they came along the road or passageway between the 'skidway' and tram track, and while standing there, this being his place of duty at the time, said driver (who had begun work that day) drove up with a log, 'snaking' it, and instead of following the customary and proper road or passageway which had been cut out and marked out for following when so hauling the logs from the woods, he turned his team out of that usual and proper road or passageway, and coming from a southerly direction, when near the end of the logs on the skidway, opposite from where plaintiff was standing, made a short turn without watching and taking the proper precaution to prevent and avoid a collision between the log he was hauling and the logs on the 'skidway,' and thus jerked the log which he was 'snaking' into and against the south end of the forty-foot log which was lying on the 'skidway' nearest the tram track, as above explained, and this caused the other end of that log to be suddenly and swiftly swung toward plaintiff (who as above alleged was standing near the opposite end of the skidway), striking his left leg with great force between the ankle and knee, knocking him down and injuring him as above specifically set forth, but such collision between the log which was being 'snaked' in and the other logs on the 'skidway' would not and could not have occurred, had said driver in 'snaking' in the log which did strike the logs on the 'skidway' as above alleged, followed the usual and proper road or passageway which had been provided for the purpose of drawing or hauling in logs to the 'skidway,' and which at all times theretofore had been used and followed for such purpose."

The court did not submit any issue of negligence upon the part of Edwards, other than the taking by Edwards of a course to the skidway other than the passageway cut out for use by the carts. The action of the lower court is assailed in appellant's first assignment of error as follows:

"The verdict is contrary to the undisputed evidence in the case, for that even if it be true that plaintiff's coemployé, Edwards, in 'snaking' in the log did not follow the usual passageway, which had been provided for hauling the logs, yet, under the undisputed evidence, his following such passageway, could not have been negligence upon his part, for that the undisputed evidence showed, beyond any controversy, that the passageway described as the usual passageway was muddy and boggy and on this account more difficult for the team being driven by said Edwards to travel upon, and for the log being drawn to be carried over than the way selected by said Edwards upon the occasion in question, and the probability of injury to any one from the selection of such way being remote and wholly without the realm of reasonable anticipation, the jury was entirely unwarranted in stamping Edwards' act in selecting such course as one wanting in ordinary care."

[1] As said by the court in the case of Lee v. I. & G. N. Ry. Co., 89 Tex. 588, 36 S. W. 63: "Negligence, whether of the plaintiff or defendant, is generally a question of fact, and becomes a question of law to be decided by the court only when the act done is in violation of some law, or when the facts are undisputed and admit of but one inference regarding the care of the party not doing the act in question. In other words, to authorize the court to take the question from the jury the evidence must be of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it"—citing the case of Railway Company v. Ives, 144 U. S. 417, 12 Sup. Ct. 679, 36 L. Ed. 485, Railway Co. v. Gasscamp, 69 Tex. 547, 7 S. W. 227, and Chatham v. Jones, 69 Tex. 746, 7 S. W. 600.

The appellant had provided, by cutting out and keeping clean and clear of obstructions, a regular path or passageway for the safe use of its teamsters, who were hauling logs to the skidway, and that passageway was kept in proper condition, and was made use of as the regular and proper route for the team drivers, and so we cannot say, as a matter of law, that negligence was not shown on the part of appellant's employé Edwards in not using the regular passageway, and in using some other passageway for the "snaking" of said logs, and therefore, without undertaking to give a résumé of the evidence, we are of the opinion that there is no merit in appellant's first assignment of error, and it is therefore overruled.

It may be well to give the charge of the court in full, in order that the objections raised to said charge in the brief of appellant may be intelligently considered. Said charge was as follows:

"Now if you believe from a preponderance of the evidence (by which is meant the greater weight of credible testimony) that the plaintiff was injured while he was in the employ of the defendant, while at work as skidway man and in the line of his duties as such, on or about December 31, 1913, in Liberty county, Texas, and that plaintiff's said injury, if any, was caused by a log which was being 'snaked' in by a team driven by Selman Edwards, another employé of the defendant engaged in the execution of said work, being pulled against the end of a log upon the skidway and thus causing the other end of the log so struck to strike plaintiff's leg and injure him, and that the said Selman Edwards, instead of following the customary and proper road or passageway which had been cut out and marked out for following when so hauling the logs from the woods, he turned his team out of that usual and proper road or passageway, and thus jerked the log which he was 'snaking' into and against the south end of a log already upon the skid, and thus caused the other end of that log to be suddenly and swiftly swung towards plaintiff, who was standing near the opposite end of the skidway, so that his left leg was struck with great force and he was knocked down and injured; and further you find from a preponderance of the evidence that the said Selman Edwards in so 'snaking' in said log and not following the usual passageway which had ben provided for hauling logs (if you find such was the fact) was negligent, bearing in mind the definition of 'negligence' as hereinafter given you, then such negligence of said employé, Edwards (if you find he was so negligent), is chargeable to the defendant, and in case you find that there was such negligence on the part of said Edwards, and further you find that the injury thereby caused plaintiff, if you find that he was then and there injured, was proximately caused by such negligence, if any, bearing in mind the definition of 'proximate cause' as hereinafter given you, then you will return a verdict for the plaintiff. And in this connection you are instructed that the term 'negligence' in law means the failure to exercise that degree of care which persons of ordinary prudence would exercise under the same or like circumstances. And 'ordinary care' is such care as an ordinarily prudent person would use under the same

or like circumstances. And in the same connection you are also charged that by 'proximate cause' is meant that which in a natural and continuous sequence unbroken by any new and independent cause produces the event, and without which the event would not have happened, and from which it could and should have reasonably been anticipated that injury would result therefrom as a natural and probable consequence under the circumstances. Therefore if you find for the plaintiff, under the foregoing instructions, you will assess such damages as will, in your judgment, reasonably and fairly compensate him in money for the physical and mental pain, if any, consequent upon his injuries received, also, if from a preponderance of the evidence you believe that plaintiff's injuries, if any, are permanent, and will diminish his ability to labor and earn money in the future, then in addition you will allow him such sum as in your judgment will reasonably and fairly compensate him for the diminution, if any, in his capacity to labor and earn money in the future. And if under the foregoing instructions you do not find for the plaintiff, then let your verdict be for the defendant. You are the exclusive judges of the facts proved, the credibility of witnesses, and the weight to be given to their testimony, but the law you receive from the court and must be governed thereby."

The court also, at the request of the defendant company, gave the following special instruction:

"If you believe from the evidence before you that upon the occasion of the accident in question it was obvious and apparent to the plaintiff, if such you find it was, as the employé Edwards approached the skids with a log being drawn by him, that there was a probability and likelihood, if such you find there was, that the log so being drawn would come in contact with a log or logs on the skids, and that thereby plaintiff would be injured, and that you further believe from the evidence that it would have been a simple and easy matter for the plaintiff to have avoided any injury to himself by removing himself away from the logs lying on the skids, so that any contact between the log being drawn up and the log on the skids would not have resulted in any injury to him, and you further believe from the evidence that the plaintiff failed to so remove himself away from the logs on the skids, so that any contact between the log being drawn up and the log or logs on the skids would not have resulted in any injury to him, 'and you further believe from the evidence that in so failing, if he did so fail, plaintiff did not exercise such care for his own safety as a person of ordinary prudence would have exercised under the same or similar circumstances, then you are charged that plaintiff was himself guilty of negligence, and if you further find that such negligence upon his part, if such you find, was the sole proximate cause of plaintiff's injuries, then and in such event you will let your verdict be in favor of the defendant."

Appellants' second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth assignments have been carefully considered, and are overruled.

[2] By the thirteenth assignment of error, the action of the court is challenged in refusing to give defendant's special charge No. 3, which was as follows:

"You are charged in this case that an employé assumes all risk and dangers which are not ordinarily incident to the business in which he is engaged, but which are nevertheless fully known to and appreciated by him. Now, if you believe from the evidence before you that the risk and danger, if any, to him of injury from a movement of a log or logs on the skidway in question through contact with the log being brought up to the skidway by the employé Edwards were not ordinarily incident to the work in which plaintiff was then and there engaged, but you nevertheless believe from the evidence that such risk and danger, if any, were fully known to and appreciated by plaintiff, and you further believe from the evidence that from such risk and danger, if any, plaintiff's injuries proximately resulted, then and in such event you will let your verdict be in favor of the defendant."

Ben Bratcher testified as follows:

"When I saw Silman Edwards coming across this short way, it did not look to me there was any danger at all there from the logs he was dragging hitting the logs on the skids. I never thought about the danger or thought about them hitting the logs. You say, so far as I could see if I was standing there looking at him it was just as safe for him to come around the short way as to come around the long way, and I say, No, sir, because I was not expecting him to come across there. I saw him coming. When I saw him coming, it did not seem to me that it was just as safe for him to come that short way as it was for him to come the long way—it did not seem it was as safe. What I thought about it was, I thought the proper drive was to come around the long way and come out straight. The reason why I thought that was proper was because I thought it would cause me more lifting and more rolling. I did not see the log he was dragging, but I could have seen it from where I was standing if I had followed it up and looked at it. I could have seen it if I had looked at it, and certainly I could seen it better than he could. He was setting up there driving his team, consisting of four mules, and he had those four mules to look after. The log was dragging on behind, hooked to those tongs. You say, If I had looked I could have seen that log, and seen where that log was going, better than Edwards, who was driving those mules, and I say, If I had been looking and expecting an accident—if there had been any such accident happened—I could have seen, stood there and looked at, the log better than he could have setting on the mule and looking at it. He would have to turn around those mules, and look back in that direction and try to watch his mules at the same time, and if I had been looking at the log that was coming back across there I could have seen it more easily than Edwards could—that it was liable to strike one of those logs—if I had been looking or expecting it, I could. If I had been looking at the log Edwards was driving, I could have seen it was going to strike this end of the log or skids more easier than Edwards could have seen it. You do understand me to say that when I saw him coming across this short way it looked more dangerous to me than for him to come around the long way. The reason why it looked more dangerous to me was I knew that was not—that they never had been any driver since I have been working on the skidway that made such a drive."

"Q. You just didn't think about it, but I asked you this question, If you had thought about it, if you had been trying to keep yourself from being hurt and looking out for yourself, isn't it a fact standing there as you were watching this log coming across that way you were in a better position to see whether it would possibly strike the end of the log on the skid than Edwards was, isn't that true? A. If I had been expecting or looking at the log in the place of him, the chances is I could have halloed and stopped him before he hit the log, and he would not have hit it. You ask me, If I had been watching the log, I could have told Edwards in time, and he could have stopped; and I say, If I had knowed he was going to strike the log, I could have stayed at home, and not been in the woods, and would not have been hurt. I was not expecting it, and I did not stay at

home; but I stayed in the proper place to do my work, and attending to the work in the best possible shape, and was not expecting nothing. You say, The place where I was standing was not any more the proper place than two feet outside the logs; and If I had been standing two feet away from the end of those logs I would not have been hurt; and If I had been standing out from the end of those logs; and I say, Yes, sir; because the logs turned around in that shape; the log turned around to me. You say, If I had been standing away from those logs a sufficient distance I would not have been injured; and I say, If I had been out four or six feet, or if I had been at home, or up here, I would not have got hurt. I had to be there; I could not handle that log unless I was there at my proper place, and in my proper station to handle that log; a man has to get close enough to the log with the cant hook to catch it before he can roll it down. I would not have stood three or four feet away from the end of the log on the skids and still been in the proper place to attend to my work. You say, If I had been looking at this log that Edwards was bringing up there, and had seen just how that log was going with reference to the end of the log that was on the skid it would have been a very easy matter for me to have stepped three or four feet out of the way; and I say, Yes, sir; I could have probably done it. You ask me if it is not a fact I was not standing there at all, but I was sitting down on the end of the log at that time Edwards came in there with the team; and I say, No, sir; I was not setting down, but I was standing on my feet and my cant hook in my hand."

As an abstract proposition, the assignment embodies a correct legal proposition. The testimony, however, shows, without doubt, that the defendant was at the place he should have been to properly perform his duties. In the requested instruction above set out, and which the court gave to the jury, the question of knowledge of the risk and appreciation of the danger arising from a contract between the logs was clearly submitted as a basis for contributory negligence upon the part of appellee in failing to remove himself away from and out of the danger of such a contact, and the jury decided such issue against appellant. If the facts as presented to the jury in this charge were found against the appellant on the defense of contributory negligence, the jury could not have found differently on the defense of assumption of extraordinary risk, for the essence of both defenses involved the question of knowledge of and appreciation of such risk and danger. Therefore, under the facts of the case, we do not think prejudicial error was committed in failing to give said charge. There is no merit in the assignment, and it is therefore overruled.

In the fourteenth assignment, it is claimed that the court erred in not giving charge No. 7 requested by the defendant, which is as follows:

"You are instructed in this case that if the employé Edwards, when he took the route which he did take with the log which he was drawing to the skids, could not reasonably have foreseen that injury would likely result from his taking such route, then and in such event, you will let your verdict be in favor of the defendant."

191 S.W.—45

[3] It is not what Edwards could or would not have reasonably foreseen when he took the route he did take, but the test would be whether, as a reasonably prudent man, in the exercise of ordinary care, and in view of all the facts and circumstances, he would have anticipated that some injury might occur by reason of his negligence. Railway Co. v. Turner, 138 S. W. 1126; Railway Co. v. Sein, 89 Tex. 66, 33 S. W. 215, 558; Poindexter v. Receivers, 101 Tex. 323, 107 S. W. 42; Henry v. McCown, 140 S. W. 1172; Railway Co. v. West, 62 Tex. Civ. App. 553, 131 S. W. 841; Eames v. Railway Co., 63 Tex. 660; Railway Co. v. Mussette, 86 Tex. 719, 26 S. W. 1075, 24 L. R. A. 642; Railway Co. v. Reed, 88 Tex. 448, 31 S. W. 1058; Washington v. Railway Co., 90 Tex. 320, 38 S. W. 764; Lipscomb v. Railway Co., 95 Tex. 20, 64 S. W. 923, 55 L. R. A. 869, 93 Am. St. Rep. 804; Railway Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Cohen v. Rittimann, 139 S. W. 61; Butler v. Gulf Pipe Line Co., 144 S. W. 342; Railway Co. v. Green, 141 S. W. 346; Bering Mfg. Co. v. Peterson, 28 Tex. Civ. App. 194, 67 S. W. 134; Hugo v. Paiz, 128 S. W. 917; Railway Co. v. Smith, 148 S. W. 821; Helena Gas Co. v. Rogers, 104 Ark. 59, 147 S. W. 475; Railway Co. v. Cabell, 161 S. W. 1083; Tel. Co. v. Long, 183 S. W. 428; Cyc. vol. 29, p. 495; Am. & Eng. Enc. of Law, vol. 8, pp. 567, 571, 572, 579, 581; Street on Personal Injuries, pp. 62, 63, 79, 84.

[4] Complaint is made in the fifteenth assignment of error of the failure of the trial court to submit the following special instruction:

"You are instructed in this case that the employé Edwards, on the occasion of the accident in question, had the right to assume that the plaintiff, Ben Bratcher, would use ordinary care to prevent and avoid injury to himself, therefore, even though you may believe from the evidence that Edwards took a route to the skids with the log, he was drawing which was not a proper route, yet if you further find from the evidence that the plaintiff, Bratcher, saw that Edwards had taken such route, and that the said Bratcher could, by use of ordinary care, have prevented or avoided his being injured by said log coming in contact with a log or logs on the skids, then and in such event plaintiff would not be entitled to recover, and your verdict will be in favor of the defendant."

By a recent statute, contributory negligence cannot be urged as a complete defense, but if proven, would diminish the damage in proportion to the negligence attributable to plaintiff. Acts 33d Legislature, p. 433; Consumers' Lignite Co. v. Grant, 181 S. W. 207. The requested instruction was a simple statement by which the jury was told that if the plaintiff failed to exercise ordinary care and thereby contributed to his injury by his negligence, he could not recover. No complaint by exception or objection to the charge of the court, or special instruction to the effect that the contributory negligence, if found, might be considered on the question of diminishing recovery, was asked. It is to be further noted that the charge on contributory

negligence, which the court gave to the jury, in substance covered the same facts contained in this requested charge. It would therefore serve no good purpose for us to comment further on the situation. The assignment is overruled.

The complaint is again made by appellant's sixteenth assignment, that as a matter of law, under the undisputed evidence, Edwards was not negligent in the submitted particular, and no such issue should have been submitted to the jury. We have already passed upon this proposition, and, as said before, we cannot say, as a matter of law, Edwards was not negligent. The same question is again raised by appellant's seventeenth assignment of error. Therefore the last two assignments are overruled.

[5] By the eighteenth assignment it is urged that the court erred to the prejudice of defendant in its general charge, and that the same was erroneous in this: That it was upon the weight of the evidence in telling the jury that there was a customary and proper passageway for the logs to be hauled over, other than the way which Edwards took, and thereby told the jury that any other way was not a proper way.

There was no dispute in the evidence on this point. It was certainly not a matter in which the court could be mistaken. All of the testimony shows that the customary and proper road, and the one which was kept clear of stumps and obstructions, was the road not taken by Edwards. It is not claimed that Edwards was following the customary road or passageway which had been cut out and marked for following when hauling logs from the woods, and therefore we find no merit in the assignment. Edwards himself testified that the teamsters were supposed to come around in the circular pathway shown on the diagram at page 10 of the statement of facts, but that on the occasion of this accident, instead of coming around this long way, meaning the regular passageway, that he took a short cut which is shown by the diagram, and appellant admits "that the testimony, though conflicting, warrants the finding that in circling the skidway on which the logs snaked in from the woods were placed was a pathway cut out for use by the carts when logs were being brought into the skidway by means of carts, and that the pathway was also used regularly and customarily to get to the skidway, even when the logs were being snaked. Therefore there is no merit in the assignment, and it is overruled.

[6] In the nineteenth assignment it is urged that the court erred to the prejudice of defendant in its general charge, in this:

"That there is submitted to the jury an issue whether the log being drawn was pulled against the end of a log on the skids, whereas the undisputed evidence shows that the said log was not pulled against the log on the skids, but that it was thrown against the skids by reason of the tongs thereon coming in contact with a stump."

The testimony shows that while the log that Edwards was snaking, or the tongs hooked thereto, struck a stump immediately before the log was jerked against the log which was on the skidway, and which injured appellee, still it remains a fact that it was the dragging of the log which caused it to come in contact with the log on the skidway, which was thrown against and injured appellant, and therefore we can find no error in the court's charge.

The appellant's twentieth assignment of error is practically the same as above. Both of these are overruled.

[7] Complaint is made by the twenty-first assignment of error that the court erred in its charge to the jury, in that there is submitted to the jury an issue whether the employé Edwards turned his team out of that usual and proper road or passageway, and thus jerked the log which he was snaking into and against the south end of a log already upon the skid, and thus caused the other end of that log to be suddenly and swiftly swung towards plaintiff, injuring him, whereas it is claimed that the undisputed evidence shows that there was no causal connection between the turning from the usual passageway and the contact between the two logs.

It may be said here that the safe road by which to snake in the logs, and the usual and customary road, was left, and that in this unusual road a stump was encountered, which hit the log that was being snaked, and the log was dragged and thrown against the log on the skidway, and this state of affairs and situation came about as the result of not following the customary and usual road. There is no merit in this assignment, and the same is overruled.

By the twenty-second assignment, error is alleged as follows:

"The court erred, to the prejudice of this defendant, in its general charge to the jury herein, and said charge was erroneous, in this, that it authorizes a recovery in favor of plaintiff upon a theory not pleaded by him, in this, that it authorizes a recovery in favor of plaintiff for the negligence of Edwards 'in so snaking in said log and not following the usual passageway,' whereas the petition attributes the contact between the two logs to the failure of Edwards, when near the end of the logs on the skids, to watch and take proper precautions to avoid a collision between the logs, of which failure there is no evidence."

[8] The twenty-third assignment is as follows:

"The court erred, to the prejudice of this defendant, in its general charge to the jury herein, and said charge was erroneous in this, that the issues therein submitted to the jury should not have been submitted, for the reason that there was a material variance between the pleadings and the proof, in this, that plaintiff alleged that when the employé Edwards got near the end of the logs on the skids he made a short turn without watching and taking the proper precautions to prevent a collision between the logs, and that thereby the contact between the logs was caused, and the evidence wholly fails to show any such act or omission on his part."

Plaintiff pleaded in his petition as follows:

"That on or about the 31st day of December, 1913, plaintiff was in the employ of defendant as 'skidway man,' which means he was keeping the premises or 'run' about the skidway clean and in proper condition for the passage of the teams which were engaged in hauling logs, and for such logs to be unloaded, all teams would be driven along this pass or 'run' between the tram track and 'skidway,' and the log wagons would be stopped near by and opposite the 'skidway,' and the driver of the wagon would then unload the logs by dropping same upon the skidway, and it was the duty of plaintiff to roll the logs back to the farthest end of the skidway and place them one closely against the other."

"That on or about the date last above mentioned the plaintiff was engaged in performing the duties required of him as 'skidway man' under his employment by defendant, and while at the place he was required to be in the performance of such duty as 'skidway man,' a log being drawn by a team driven by another employé of defendant was pulled against the end of a log upon said 'skidway,' causing the other end of the log so struck to strike plaintiff's left leg with great force, knocking him down, the log falling on him and he was pinioned to the ground, and further plaintiff was seriously injured as follows: * * *

"That plaintiff's said injury was due to and caused by the negligence of the defendant in this: * * * Plaintiff in the due and proper performance of his duty as 'skidway man' had taken a position near the north end of the three short logs on the 'skidway' as above mentioned, so as to be out of the way of the team and driver as they came along the road or passageway between the skidway man and tram track, and while standing there, this being his place of duty at the time, said driver (who had begun work that day) drove up with a log, 'snaking' it, and instead of following the customary and proper road or passageway which had been cut out and marked out for following when so hauling the logs from the woods, he turned his team out of that usual and proper road or passageway, and coming from a southerly direction, when near the end of the logs on the skidway, opposite from where plaintiff was standing, made a short turn without watching and taking the proper precaution to prevent and avoid a collision between the log he was hauling and the logs on the 'skidway,' and thus jerked the log which he was 'snaking' into and against the south end of the forty-foot log which was lying on the 'skidway' nearest the tram track, as above explained, and this caused the other end of that log to be suddenly and swiftly swung toward plaintiff (who as above alleged was standing near the opposite end of the skidway), striking his left leg with great force between the ankle and knee, knocking him down and injuring him as above specifically set forth, but such collision between the log which was being 'snaked' in and the other logs on the 'skidway,' as above alleged, followed the usual and proper road or passageway which had been provided for the purpose of drawing or hauling in logs to the 'skidway,' and which at all times theretofore had been used and followed for such purpose."

The testimony shows that if Edwards had followed the regular and proper route, he could not have struck the log on the skidway, which injured appellee. The customary and proper route was kept in condition for the purpose of "snaking" or hauling the logs along, and was free from obstructions, while the course that Edwards followed was obstructed with stumps, etc., which made it more difficult to avoid accidents. There is no merit in this assignment, and it is overruled.

The twenty-fifth assignment of error is to the effect that the court erred in failing and refusing to give the jury special charge No. 1, which was that under the law and evidence, plaintiff was not entitled to any recovery against the defendant, Kirby Lumber Company, and requesting that the verdict should be in favor of the defendant.

We have carefully examined this entire record. At the risk of repeating what has been gone over, we might say that the facts and situations as presented by plaintiff were simple. As a skidway man his duties required him to be at a certain point, and to do certain things. There was a road or passageway provided by which all teams, whether the logs were hauled or "snaked," could approach the skidway in such a manner as there was no danger of striking the logs near which the plaintiff was compelled to be in the exercise of his duties. The employé Edwards saw fit to approach the skidway from a different route than that customarily and usually used, and which was a safe way, and in this approach over a route which was obstructed, the log that he was "snaking" either came in contact with a stump and was dragged and thrown against the log nearest to the skidway, or to say the least of it, did come in contact with it, and caused the injury to plaintiff, and this could have been avoided by using the usual and customary passageway that was provided for the hauling and "snaking" of logs. We do not find in this record anything that would warrant the conclusion that the defendant company has not received a fair and impartial trial. The injury of plaintiff was severe and fully warrants the jury in the assessment of the damage sustained. No error has been committed which, as a matter of law, causes or would cause a reversal of this cause. As said before, the record has been carefully examined, the rights of the defendant seem to have been carefully guarded, the charge of the court was a fair presentation of the issues to be determined, and we are unable to find such error in this record as would justify a reversal of the same.

Therefore the cause is in all things affirmed. It is so ordered.

### On Motion for Rehearing.

HIGHTOWER, Jr., C. J. At a former day of this term the judgment of the lower court in this case was affirmed, and thereafter appellant in due time filed its motion for rehearing, which motion is now before us for disposition.

The motion for rehearing is a very exhaustive one, and appellant therein challenges the opinion of this court touching each and every assignment therein treated, but after a very careful consideration of the motion, we have concluded that this case was correctly disposed of by the original opinion filed herein, and that appellant's motion for rehearing should be overruled.

If it would serve any useful purpose for this court to again discuss at length the points raised in the motion for rehearing, all of which were passed upon in the original opinion, we would not hesitate to do so; but believing that no useful purpose would be served by so doing, we shall not enter into a rediscussion of the many assignments raised by appellant, and again presented in the motion for rehearing.

As said by this court in the original opinion, the question of negligence on the part of appellant's employé Edwards in the particular specified in plaintiff's petition, we still think was a question of fact for the determination of the jury, and that question of fact was determined by the jury against appellant. We also adhere to the views expressed in the original opinion to the effect that the issue of proximate cause was a question of fact for the determination of the jury, under all the facts and circumstances of this case, and that issue was also determined by the jury against appellant, and without again discussing the facts as contained in the record bearing upon these two issues, we deem it sufficient to say that in our opinion the evidence bearing upon both the issue of negligence and that of proximate cause was sufficient to warrant the jury in determining both questions against appellant; at least, we think that it cannot be properly held as matter of law that no negligence was shown on the part of appellant, as claimed by appellee, or that if negligence was shown, we cannot say as matter of law that such negligence was not shown to be the proximate cause of appellee's injury.

There is one further complaint made by appellant in its motion for rehearing, however, concerning which we desire to speak briefly. It is with reference to appellant's assignment of error No. 13. The assignment was:

"Because the court erred, to the prejudice of this defendant, in failing and refusing to give in charge to the jury special charge No. 3, requested by this defendant, which said special charge was as follows: 'You are charged in this case that an employé assumes all risks and dangers which are not ordinarily incident to the business in which he is engaged, but which nevertheless are fully known to and appreciated by him. Now if you believe from the evidence before you that the risk and danger, if any, of injury to him from a movement of a log or logs on the skidway in question through contact with the log being brought up to the skidway by the employé Edwards were not ordinarily incident to the work in which plaintiff was then and there engaged, but you nevertheless believe from the evidence that such risk and danger, if any, was fully known to and appreciated by plaintiff, and you further believe from the evidence that from such risk and danger, if any, plaintiff's injury proximately resulted, then and in such event you will let your verdict be in favor of the defendant.'"

The above assignment was fully considered and discussed at some length, as shown by the original opinion of this court in this case, and among other things, it was said in the opinion, as stated by appellant in the mo-

tion for rehearing, that this requested charge was abstractly correct, but that as stated in the original opinion, the court was of the opinion that in view of the fact that the trial court gave to the jury special charge No. 4 requested by appellant, this court was of the opinion that the refusal to give said special charge No. 3, above quoted, if error, the same was harmless, for the reason that the giving of said special charge No. 4, and the finding by the jury of the point therein presented against appellant, rendered it very unlikely that the jury would have found in favor of appellant had said special charge No. 3, above quoted, been given to the jury.

Special charge No. 4, requested by appellant, and which was given by the trial court, was as follows:

"Gentlemen of the jury: If you believe from the evidence before you that upon the occasion of the accident in question, it was obvious and apparent to the plaintiff, if such you find it was, as the employé Edwards approached the skids with the log being drawn by him, that there was a probability and likelihood, if such you find there was, that the log so being drawn would come in contact with a log or logs on the skids, and that thereby plaintiff would be injured, and you further believe from the evidence that it would have been a simple and easy matter for the plaintiff to have avoided any injury to himself by removing himself away from the logs lying on the skids, so that any contact between the log being drawn up and a log or logs on the skids would not have resulted in any injury to him, and you further believe from the evidence that the plaintiff failed to so remove himself away from the logs on the skids, so that any contact between the logs being drawn up and a log or logs on the skids would not have resulted in any injury to him, and you further believe from the evidence that in so failing, if he did so fail, plaintiff did not exercise such care for his own safety as a person of ordinary prudence would have exercised under the same or similar circumstances, then you are charged that plaintiff was himself guilty of negligence, and if you further find that such negligence upon his part, if such you find, was the sole, proximate cause of plaintiff's injury, then and in such event you will let your verdict be in favor of the defendant."

[9] In discussing this special charge No. 4 given in the court below at the request of appellant, this court, in the original opinion, denominated the same a charge on the issue of contributory negligence. As pointed out by appellant in the motion for rehearing, however, such charge, strictly and technically speaking, was not a charge on the issue of contributory negligence, but the same in effect told the jury that if the plaintiff was guilty of negligence which was the sole cause of his injury, thereby excluding and leaving out of consideration the question of negligence on the part of defendant, then the plaintiff could not recover; and this court thought at the time the original opinion was written, and now thinks, that special charge No. 4 announced a correct proposition of law, but, as above stated, the same cannot be accurately called a charge on the issue of contributory negligence. The fact is, as stated by appellant, in its motion for rehear-

ing, no charge on the issue of contributory negligence, technically and accurately speaking, was given by the trial court, and none was requested by appellant. But it would appear from the appellant's motion for rehearing that counsel for appellant are of the opinion that this court meant to hold that there was no distinction or difference between the defense of contributory negligence and that of assumed risk, and that this court thought that because said special charge No. 4, which this court at that time denominated a charge on contributory negligence, was given to the jury, and the issue there submitted was decided against appellant, that the same had the same effect as if the requested charge on assumed risk above quoted had been given to the jury, as requested. In this connection we desire to say that this court fully recognizes that the defenses of contributory negligence and assumed risk so frequently interposed in cases of this character are separate and entirely different and distinct defenses, and that where both such defenses are interposed by the pleading of the defendant, and where the evidence adduced in support of such pleadings raises the issue of both such defenses, the trial court could rarely refuse to submit to the jury proper charges relative to each of such defenses. G. H. & H. Ry. Co. v. Hodnett, 106 Tex. 190, 163 S. W. 13; Railway Co. v. Hannig, 91 Tex. 347, 43 S. W. 508; Railway Co. v. Bradford, 66 Tex. 732, 2 S. W. 595, 59 Am. Rep. 639; Railway Co. v. Bingle, 91 Tex. 287, 42 S. W. 971; Railway Co. v. Mathis, 101 Tex. 342, 107 S. W. 530.

[10] After a very full and careful reconsideration of the record in this case, this court is now of the opinion that the charge on the issue of assumed risk, being special charge No. 3, as above quoted, requested by defendant, should not have been given to the jury at all, and the same was correctly refused by the trial court, for the reason that the evidence did not raise the issue of assumed risk, as embraced in that requested instruction. The negligence complained of in this case was not that some instrument, tool, implement, machinery, or instrumentality furnished by him to become defective or unsafe, or that the master had failed to use proper care to furnish the servant a reasonably safe place in which to perform or discharge the duties of his employment, all of which were known, or must necessarily have been known, by the employé in the exercise of ordinary care on his part, while discharging his duties of his employment, but the contention on the part of appellee was that appellant's employé Edwards committed an act right at the very time of the injury, which an ordinarily prudent person would not have committed, under the same or similar circumstances and that the commission of such act, under such circumstances, was negligence,

which was chargeable to appellant, and which resulted, then and there, in appellee's injury.

We think, however, that the trial court would have been justified, and perhaps required, to give to the jury some correct charge on the issue of contributory negligence had such been requested by appellant, but, as above stated, no such charge in any form was requested.

Appellant also requested the trial court to charge the jury as follows:

"Gentlemen of the jury: You are charged in this case that the employé assumes all risks and dangers which are ordinarily incident to the work in which he is engaged. Now if you believe from the evidence that the injuries which plaintiff sustained on the occasion in question resulted proximately from risks and dangers ordinarily incident to the work in which he was then and there engaged, you will, in such event, let your verdict be in favor of the defendant."

[11] This requested charge was refused by the trial court, and we think properly so, because of the Acts of the Thirty-Third Legislature, chapter 179, § 1, of part 1, page 429, which took away from the employer, such as appellant in this case, the defense of assumed risk, where the risk of danger is ordinarily incident to the employment in which the employé is engaged. Middleton v. Tex. Light & Power Co., 178 S. W. 956; Memphis Cotton Oil Co. v. Tolbert, 171 S. W. 309; Consumers' Lignite Co. v. Grant, 181 S. W. 207.

Appellant, however, is not insisting in this court that the trial court erred in refusing to give this special charge. Had it not been for the act of the Legislature next above referred to, it may be that the refusal of the court to have given this charge on assumed risk, under the facts in this case, would be error; but of course we are not passing upon that question at this time, because it is not before us. We do feel certain, however, that under the evidence as discussed in the record in this case, the trial court committed no error in refusing special instruction No. 3, requested by appellant, on the issue of assumed risk.

The motion is therefore overruled.